RENWICK, SHAW & CROSSETT v. THE D. & N. W. R. Co.

1. **Railroads: AD QUOD DAMNUM: RIPARIAN OWNER.** To entitle a riparian owner to damages for the appropriation by a railway company of land upon the banks of the Mississippi or Missouri rivers, under chapter 35, Laws of 1874, it is not necessary that he should have erected a crib or pier in front of his property.

2. ———: ———: ———. It was competent for the State to provide, as in the statute cited, that a railway company should not appropriate land for its own uses, between high and low water mark, without giving compensation to the riparian owner.

3. ———: ———: ———. The fact that the railway company appropriated a right of way over a fill or embankment, between the main land and a crib which the plaintiff was not authorized to erect, would not deprive him of the right to damages for the right of way so appropriated.

4. ———: ———: MUNICIPAL CORPORATION. The grant of authority to the company, by the city of Davenport, to construct its road over the land in question, did not impair the right of the riparian owner to recover.

5. ———: ———: ALL PROPERTY TO BE CONSIDERED. The injury to the entire property of the plaintiffs necessarily used by them in their business was properly considered by the jury in estimating their damages, notwithstanding the property was divided by a street or highway running through it.

6. ———: ———: MEASURE OF DAMAGES. The plaintiffs being simply lessees, the measure of damages for right of way was the difference between the value of the use of the premises before and after the road was constructed.

7. **Practice in the Supreme Court : ARGUMENT.** When attention is not called to errors assigned, in the argument in chief of the appellant, they will be deemed to have been waived.

*Appeal from Scott Circuit Court.*

FRIDAY, DECEMBER 6.

THIS proceeding was commenced by the appellant filing with the sheriff of Scott county a petition for the appointment of freeholders to assess the damages caused by the location and construction of appellant's railway along the

bank of the Mississippi river, between high and low water mark, in front of certain premises occupied by the appellees as lessees. From the assessment by the sheriff's jury both parties appealed to the circuit court, where there was a jury trial and judgment for the plaintiffs. The defendant alone appeals.

*Grant & Grant* and *Bills & Block*, for appellant.

*Davison & Lane* and *Putnam & Rogers,* for appellees.

Seevers, J.—The plaintiffs are the lessees of a certain irregular parcel of land within the corporate limits of the city of Davenport, having a river front of about one thousand three hundred feet, and extending back about nine hundred feet, on which is situate a steam saw-mill, planing-mill, lumber-yard, houses, etc. The said premises are used exclusively for the manufacturing and selling of lumber; or, rather, the plaintiffs so claim. Logs are obtained by being floated down the river and landed in front of, or convenient to, the saw-mill. The plaintiffs, or those under whom they claim, have gradually and from year to year made an embankment from a projection on the shore into the river, at the outer end of which there has been erected a stone crib or pier. The embankment between the crib and natural shore was made principally with the refuse of the mill, but it is firm and solid. Across this embankment the railway was constructed.

The council of the city of Davenport, under certain conditions prescribed, in an ordinance, authorized the construction of the railway where the same was located.

On March 3, 1873, Congress passed the following act:

"The owners of saw-mills on the Mississippi river are authorized and empowered, under the direction of the Secretary of War, to construct piers or cribs in front of their mill property on the banks of the Mississippi river for the protection of their mills and rafts against damage by flood and ice, provided that the piers or cribs so constructed do not

interfere with or obstruct the navigation of the river; and in case any pier or crib constructed under authority of this section shall, at any time and for any cause, be found to obstruct the navigation of the river, the government reserves the right to remove or direct the removal of it, at the cost and expense of the owners thereof." Revised Statutes of United States, § 5254.

It is conceded that the consent of the Secretary of War was not obtained for the erection of the embankment and crib in question.

In 1874 the General Assembly of this State passed the following act:

"1. That all owners and lessees of lands or lots situate on the Iowa banks of the Mississippi and Missouri rivers, upon which property there now is, or hereafter may be, carried on any business in any way connected with the navigation of the rivers, or to which said navigation is a proper or convenient adjunct, are hereby authorized to construct and maintain in front of their said property such piers, cribs, booms, and other proper and convenient erections and devices for the use of their respective pursuits, and the protection and harbor of rafts, logs, floats and other water crafts; *provided*, that the same present no material or unreasonable obstruction to the navigation of the stream, or to a similar use of adjoining property.

"2. It shall not be lawful for any person or corporation to construct or operate any railroad or other obstruction between such lots or lands and either of said rivers, or upon the shore or margin thereof, unless the injury and damage to such owners occasioned thereby shall be first ascertained and compensated in the manner provided by chapter 4, title 10 of the Code." Public Laws of the Fifteenth General Assembly, 28.

The important and material questions discussed by counsel are: *First*, that Congress has exclusive jurisdiction over the navigable waters of the United States, and having exercised it

Renwick, Shaw & Crossett v. The D. & N. W. R. Co.

by providing that cribs or piers may be erected on certain conditions by owners of saw-mills on the Mississippi river, in front of their property, that the aforesaid act of the General Assembly is absolutely void, or rather that the plaintiffs are not entitled to damages thereunder; *second*, that the railway having been properly constructed, and in accordance with the ordinance of the city of Davenport, the plaintiffs, therefore, are not entitled to damages; and, *third*, that the rule for the assessment of damages given the jury is erroneous. Growing out of these general propositions are certain incidental questions, based on the instructions given or those refused, and the admission or rejection of evidence. It is also claimed the damages assessed are excessive. These several questions will be considered to such an extent as is deemed proper and essential.

I. For the purposes of this case it will be conceded that Congress, under the power to regulate commerce, has exclusive jurisdiction over the Mississippi river, and, having exercised such power, all State legislation in conflict therewith is void.

1. RAILROADS: ad quod damnum: riparian owner.

This brings us at once to a consideration and construction of the legislation of the State which is claimed to be in conflict with that of Congress.

We shall not stop to consider whether the first section of the act of the General Asssmbly of 1874, in so far as it authorizes the erection of cribs or piers, is in conflict with the act of Congress or not, but will concede it to be so.

It does not follow that, therefore, the second section is void, and the plaintiffs not entitled to damages thereunder. The two sections are separate and distinct, and embrace different subjects. One, therefore, may stand, although the other is unconstitutional and void.

It is insisted that the second section only refers to and embraces the property described in the first, and that, unless a riparian owner has availed himself of the benefits of the first section, he is not entitled to damages under the second; or

because of the fact that he has availed himself of the benefits of the first, he is not entitled to damages under the second section.

We cannot concur in these propositions, and believe them to be unsound.

We have no occasion to determine whether a riparian owner who is not engaged in any business connected with the navigation of the river can recover damages because of the location of a railway, as in the case at bar. But we do not believe that, when one is engaged in such business, it is essential to his recovery that he should have erected a crib or pier in front of his property. Such an invidious distinction between riparian owners engaged in business connected with the navigation of the river should not be indulged. Nor should such construction be tolerated, unless it is required by the positive and express words of the statute, or appears therefrom by necessary and unmistakable implication.

So far from this appearing, the clear intent of the statute is to place all riparian owners on the same footing. The damages accrue under the statute to the lots and land, and business done thereon connected with the navigation of the river by reason of the construction of the railway, and not because a crib or pier has been erected in front of the premises.

The reference to such "lots or lands" in the second section of the statute does not mean only such "lots or lands" mentioned in the first section, in front of which piers or cribs have been constructed, but to such "lots or lands" as are "situate on the Iowa banks of the Missisippi and Missouri rivers upon which property there now is, or hereafter may be, carried on any business in any way connected with the navigation of the rivers." It must be true, or at least may be, that a riparian owner may carry on a business connected with the navigation of either of said rivers without the erection of any crib or pier. Such an owner, under the statute, is as much entitled to damages as one who has made, or may hereafter make, such erections.

We conclude, therefore, that the second section of the act of the General Assembly of this State, above quoted, is not void because in conflict with the act of Congress.

II. In *McManus v. Carmichael*, 3 Iowa, 1, it was held that the bed of the Mississippi river extends to high-water mark, and in *Tomlin v. The D., B. & M. R. Co.*, 32 Id., 106, it was held that a riparian owner was not entitled to damages because of the construction of a railway in front of his premises, between high and low water mark.

These cases recognize the doctrine that the title to the soil between high and low water is vested in the State, and not in the United States, and such is the well-settled rule. *Martin v. Waddell*, 16 Pet., 367; *Den. v. Jersey Company*, 15 How., 426; *Pollard v. Hagan*, 3 How., 212. When the Tomlin case was determined section 1328 of the Revision was in force, which provided that any railroad corporation might use, occupy and enjoy "any lands of the State," without payment of damages, to an extent necessary and convenient for the purposes of the corporation. The theory of that decision is that the State, as the owner of the soil between high and low water, had granted the defendant the right to construct its railway thereon, without the payment of damages; that the plaintiff was not entitled to recover, because thereby he had been deprived of the free and convenient access to the river.

Section 1328 of the Revision has been repealed, and in its place the statute of 1874 has been enacted. The rule of the Tomlin case is, therefore, no longer applicable.

The State being the owner of the soil, the defendant was not entitled to construct its railway thereon without the consent of the State. In the absence of such consent the State could have enjoined the construction of the railway. The right to construct the road has been granted on condition that the defendant shall indemnify the riparian owner. Without doubt, we think, the State had the power not only to grant the right, but to annex thereto the condition mentioned.

The defendant has availed itself of the privilege granted, but in substance says the conditions are invalid. That is to say, the argument is the State had the power to make the grant, but not the power to annex the condition in question. In this we do not concur, but think whenever the unrestricted power to grant any given thing or right exists, and the power is exercised, the grantor may annex any conditions thereto he sees proper, and that any one accepting the benefits cannot be permitted to repudiate the conditions and burdens imposed by the grantor.

III. While it is not entirely clear, yet we incline to think the defendant, in certain instructions which were refused, requested the court to charge that plaintiffs were not entitled to recover because the railway was located across the fill or embankment which extended into the river and terminated at the crib.

In *Atlee v. Packet Co.*, 21 Wall., 389, the pier was erected without• authority, and, being an obstruction to navigation, it was held that damages might be recovered by the owner of a barge which collided therewith.

The case at bar is different in several respects, even if it be conceded that the crib is unlawful and constitutes an obstruction to navigation; prominent among which is that the defendant is not seeking to recover damages caused by the erection of the crib. In no respect has the defendant been damaged thereby. But the right of a riparian owner to erect wharves, piers, and similar structures, provided the same do not obstruct navigation, has been affirmed in several adjudicated cases. *Musser v. Hershey*, 42 Iowa, 356, and cases there cited.                                          •

If the crib is an unlawful structure, it by no means follows that the embankment is, at the place where it is crossed by the railway between high and low water. If it is, then the railway is also. It will be assumed, therefore, that the portion of the embankment within the right of way does not constitute an obstruction to navigation. It was, therefore, property,

because it was lawfully constructed, and the defendant cannot take and appropriate the same to its own use without compensating the plaintiffs therefor. There is nothing in the Tomlin case that conflicts with this view. All that the plaintiff claimed in that case to be deprived of, by the construction of the railway, was his free access to the river. His property was in no respect interfered with.

It is not claimed that the defendant was in any respect injured or damaged by the erection of the embankment, or that it formed an obstruction to defendant's navigation of the river. In fact, it is clear it did not desire to do so, but desires to take and appropriate the plaintiffs' property because it interferes with some one's rights who does not see proper to complain.

The undertaking of the defendant for the protection of others is larger than it has authority to assume. There was no error in the refusal to instruct in this respect, as asked by the defendant.

For the reasons heretofore stated there was no error in refusing instructions three, four and seven, asked by the defendant.

IV. Can the authority granted by the city of Davenport to construct the railway have the effect to prevent the plaintiffs from recovering damages? A solution of this question depends on the extent of the powers granted in the charter of the city by the General Assembly. The only power granted in this respect we have been able to discover is "to improve and preserve the navigation of the Mississippi river within the limits of the city." Article 5, § 2, City Charter Laws of 1851, 117.

4. ——: ——: municipal corporations.

It is somewhat difficult to see how the navigation of the river would be preserved by the construction of a railway along its banks between high and low water. We are not prepared to say that the consent of the city was not essential, but that such consent had the slightest effect on the plaintiffs' rights we do not believe. The city had no such power. Pre-

vious to the repeal of section 1328 of the Revision a railway might have been located and constructed over the premises in question, subject only to the equitable control of the city. *C., N. & S. W. R. v. The Mayor of Newton,* 36 Iowa, 299. But the ordinance in question was not passed until after the repeal of that section and the enactment of the law of 1874, which in express terms gave the plaintiffs the right to damages.

V. The court, in substance, charged the jury that in assessing the damages they should consider the entire premises of which the plaintiffs were the lessees necessarily and properly used by them in their business, although the premises were divided by a street or highway. It is said the planing-mill, and perhaps other portions of the property, had no connection with the saw-mill, and it was, therefore, erroneous to direct the jury to take into consideration the whole of the premises. But there was evidence tending to show otherwise. It was, therefore, a question for the jury whether or not the whole of the premises was "necessarily and properly" used by the plaintiffs "in their business," and the extent of the damages.

The instruction is not erroneous, however much the action of the jury may be. For the same reason the objection made to the eighth instruction is not well taken. For the reasons stated instructions nine and ten, in relation to the rent of dwelling-houses on said premises, were properly refused. It is urged that *Fleming v. The Chicago, D. & M. R. Co.,* 34 Iowa, 353, is in conflict with this view. This is a mistake. In that case damages were claimed by the owner of the fee, and the lots taken by the right of way were remote from other lots, and he sought to recover damages sustained by reason of his ownership of the latter. The plaintiffs seek to recover damages caused by the location of the railway over a parcel of land through which is a street or highway which they have leased for business purposes. For the purposes of their business the highway may have been an advantage. If their leasehold interest was rendered less valuable by reason of the

construction of the railway, the fact that the premises leased were traversed by a street should not be considered in reduction of their damages. The business done, and property on both sides thereof, should be considered. Besides, the defendant sought to have the damages assessed for the whole tract.

VI. The jury were instructed: "Nor is the defendant entitled to have the particular manner in which the road is constructed considered, in reduction of the damages occasioned by taking the right of way." Why this clause of the ninth instruction is erroneous counsel have not advised us. No authority is cited or argument made in support of the position of counsel. It is, therefore, sufficient to say, as an assessment of damages was asked and in fact made by the sheriff's jury at the time the road was located, its construction afterward, however well done, could not affect the plaintiff's rights which before that had accrued.

VII. The petition filed with the sheriff asked that the right of way, one hundred feet wide, be condemned. The sheriff's jury reported that they had assessed the damages for that width. The defendant deposited with the sheriff the amount so assessed, and notified the plaintiffs, before or pending the appeal, that they were about to enter on such right of way, and construct the railway.

The court instructed the jury to estimate the damages on the basis that one hundred feet in width was taken. This is claimed to be erroneous, because the defendant had filed a paper limiting the right of way to about one-half of said width. The abstract shows the court refused to permit said paper to be filed. Therefore there was no error in the instruction, for the record failed to show that the defendant had abandoned its right to have any part of the one hundred feet condemned. The error, if any, was in refusing permission to file the paper. This, while assigned as error, is not even mentioned in the argument, and will, therefore, be disregarded.

VIII. In the eleventh and twelfth instructions the defendant asked the court to instruct the jury in relation to possible

and remote damages.   They were refused, but the substance thereof was given in the ninth instruction of the charge of the court, and in the twenty-first instruction asked by the defendant and given by the court.   There was not, therefore, any prejudicial error in refusing the eleventh and twelfth instructions asked.

IX.   In the thirteenth instruction the defendant requested the court to say to the jury "that the true measure of

6. ——: ——: damages is the difference in the value of the
m asure of
damages.    property before the road was built in front of it, and after it is built * * *."   This was refused.   It will be readily seen that this instruction is not applicable to the facts.   The plaintiffs are not the owners of the fee, and it is the annual use during the term of their lease which the jury were authorized to consider; that is, the value of the annual use of the premises before taking the right of way, and what it was worth afterward.   The eighth instruction in the charge of the court states the proper rule.

X.   It is said "the court erred in refusing to allow Goldsbury, Suiter, Lambert et al. to testify, * * * because they were not experts."   There were two Suiters examined as witnesses, W. M. and John.   Which one is referred to, or who the others are than those named, counsel have not informed us.   The abstract fails to disclose that any objection was made to the testimony of Goldsbury or John Suiter, or that any portion of their evidence was excluded.   No such objection as the one indicated by counsel was made to the testimony of W M. Suiter, and no part of his evidence was excluded for the reason above stated.   Lambert was asked: "Tell the jury what was [the] difference in value of this property before and after the railroad was built?"   This was objected to "because the witness was not competent to give an opinion, and asks him to state directly the amount of damage to the property, instead of asking the value before and after the condemnation."   The objections were sustained, and the abstract fails to disclose on which ground.   The last one,

at least, is well taken, and there was no error in sustaining that objection.

XI.   The jury assessed the plaintiffs' damages at five thousand dollars, which is said to be excessive.   The lease had between five and six years to run.   The damages assessed, therefore, amounted to not exceeding one thousand dollars per year.   While the amount allowed was liberal, we are not prepared to say that it indicates either passion or prejudice. We, therefore, cannot interfere.

XII.   Errors were assigned because of the refusal to give instructions twenty-three and twenty-four, asked by the defend-

7. PRACTICE in the supreme court: argument. ant, and our attention is called thereto for the first time in the reply to the argument of the appellees.   At the time counsel for the appellees prepared their argument they had the right to regard the errors aforesaid as abandoned or waived.   It is not intimated that the failure to insist on said errors in the argument in chief was through oversight.   Under such circumstances we would not be warranted in reversing the cause, if in our opinion the instructions should have been given without giving the appellees an opportunity to be heard.   But we have not so concluded, nor have we examined the instructions with a view of determining their correctness, deeming the better practice to be that the errors should be regarded as waived or abandoned.

AFFIRMED.