ELLEN SCHALLER, PLAINTIFF IN ERROR, V. CITY OF OMAHA, DEFENDANT IN ERROR.

Municipal Corporations: GRADING STREETS: DAMAGES: BENEFITS. In awarding just compensation for property damaged for public use, general benefits shared by the public at large cannot be considered, while special benefits to the property damaged may be.

ERROR to the district court for Douglas county. Tried below before NEVILLE, J.

A. C. Wakeley, George W. Ambrose, George B. Lake, and Savage, Morris & Davis, for plaintiff in error, cited: Gottschalk v. C., B. & Q. R. R., 14 Neb., 550. Harmon v. Omaha, 17 Id., 548. Wagner v. Gage County, 3 Id., 237. McElroy v. Kansas City, 21 Fed. Rep., 257. Chambers v. R. R. Co., 69 Ga., 320. Carpenter v. Jennings, 77 Ill., 252. Brown v. Beatty, 34 Miss., 227. N. O. R. R. Co. v. Moye, 39 Miss., 374.

John L. Webster, for defendant in error, cited: Carpenter v. Jennings, 77 Ill., 250. Todd v. R. R. Co., 78 Id., 530. Shawneetown v. Mason, 82 Id., 337. C. & P. R. R. Co. v. Francis, 70 Id., 238. City of Atlanta v. Green, 67 Ga., 386. Moore v. Atlanta, 70 Id., 611. Denver v. Bayer, 7 Col., 113. Spencer v. R. R. Co., 23 West Va., 406. Julia Building Assn. v. Bell Telephone Co., 88 Mo., 258. Reardon v. San Francisco, 66 Cal., 492.

MAXWELL, J.

This is an action to recover damages sustained by the plaintiff by reason of grading the streets bordering on her property in the city of Omaha. She alleges in her petition, "That she is, and has been at the times herein men-

tioned, the owner in fee simple, and in the actual occupancy of the following described premises, to-wit: lots one and two in block five in Sweesy's addition to the city of Omaha, county of Douglas, and state of Nebraska; that in the spring of the year 1878 she commenced the building of improvements upon said premises, with the purpose of making said premises a permanent home for herself and family; that she then erected thereon a large two-story frame dwelling-house, together with a barn and carriage house, out-buildings, sheds, and a well and cistern, and such other appurtenances as usually appertain to a home, and furthermore embellished the said premises with ornamental and shade trees, which, at the time of the injuries herein complained of, had grown to a considerable size. The premises directly in front of plaintiff's house had also been sodded down at a considerable expense; that plaintiff's said lots are situated on the south-west corner of California and Twenty-fourth streets, fronting north on California street 132 feet, and east on Twenty-fourth street 142 feet."

It is then alleged that in 1884 ordinances were passed by the proper authorities of Omaha, fixing the grades of the streets named and providing for grading the same. "That previous to said grade complained of, the premises of the plaintiff were accessible by a gradual ascent from about 23d street, and were easily approached from either 24th street on the east or California street on the north, and the ground adjacent thereto was almost level; that the said grading of California street along the front of plaintiff's premises made a cut of about eighteen feet at the north-east corner of said lots, extending west the same depth along the whole front of said lots; that thereby it became necessary to cut and grade Twenty-fourth street to the level of California street at the place of their intersection, and the said grade and cut was made, and said cut so made on Twenty-fourth street extended southward the

whole depth of plaintiff's lots, to-wit, 142 feet; said cut being about eighteen feet at the north-east corner of said lots, and gradually lessening to a cut of about twelve feet at the south-east corner of said lots ; that said grade and cutting down of Twenty-fourth street necessitated the grading of the alley-way in said block five, and the same was so graded and cut down, the cut thereof being about twelve feet on the south-east corner of said lots, and gradually lessening and extending westward through said block; that by reason of said grading and cutting in front of and at the side and in the rear of plaintiff's premises, she has been greatly and irreparably damaged; her grounds, before accessible, are now, by their great elevation above the adjacent streets, become inaccessible by ordinary means of conveyance; that said grade and deep cuts render it absolutely necessary to lower the whole surface of said lots to the present level of the circumjacent streets, the doing of which will manifestly be a great expense to plaintiff; that said grade necessitates the lowering of said dwelling-house and barn and out-buildings to the street level; that thereby plaintiff's well and cistern will be entirely destroyed, as well as the shade trees on said premises ; that in the year 1881, and before said grade was established, plaintiff had erected on said lots, fronting on California street, a barn and carriage house, at an expense of five hundred dollars; had enclosed her lots with a fence ; that the steep embankment, consequent upon said grade, rendered said barn inaccessible and completely useless, and plaintiff was obliged to tear down the same and erect a new barn upon said alley, and grade an approach thereto ; that in anticipation of said grade, plaintiff had taken up said fence and set it back a foot or two beyond the line of said grade, but said grading was so negligently and carelessly done, that her said fence was entirely destroyed ; that thereby a row of shade trees about said premises, which had been set out in 1878, were completely destroyed ;

that by rea on of the premises and her injuries in other respects, the plaintiff has been damaged in the sum of five thousand dollars.

The petition contains an appropriate prayer for relief.

The city, in its answer, in effect denies the damage to plaintiff's property, and pleads special benefits in excess of the damage in the amount of two thousand dollars, for which it prays judgment. There is a reply to the answer, which need not be noticed. On the trial of the cause the jury returned a verdict in favor of the defendant. A motion for a new trial was thereupon made by the plaintiff, upon the grounds, first, that the evidence was not sufficient to sustain the verdict; second, errors of law occurring at the trial; third, error in giving certain instructions named. The motion was overruled, and judgment entered on the verdict dismissing the action.

The testimony shows that, before the grading, the land immediately around the house in question was nearly level, gradually sloping towards the south and east; that in consequence of the grading the house was left at an average height of more than fourteen feet above the level of the street; that in that condition it is almost inaccessible except by means of stairs; that to bring the lots to a proper grade above the streets named would require the removal of more than thirteen thousand cubic yards of earth, to remove which would cost, as shown by the testimony, from twenty-five hundred to thirty-five hundred dollars; that the house would sustain considerable damage by lowering it to the grade, which one of the witnesses fixes at a very considerable sum, which need not be named here. There is also proof as to damages from the destruction of trees on the lots in question, fixed by one of the witnesses at the sum of three hundred and sixty dollars. The aggregate of the damages, as proved, amount to a very large sum, and greatly in excess of the special benefits sworn to by the witnesses. A number of real estate agents were called by

the city, who stated that the benefits to the property in question from the grading of the streets named, and the general advance in property, were at least four thousand dollars, two thousand dollars of which should be credited to the general advance in property, and two thousand to special benefits. Other witnesses called by the city stated generally that they thought the property had not been damaged, as in their opinion it was worth as much after the improvement as before, but upon cross-examination they estimated the cost of grading the lots at from twelve hundred to fourteen hundred dollars. A number of real estate agents were called by the plaintiff, who testified that the lots in question were not benefited by the grade and that it was a positive injury. One of such witnesses, Mr. H. B. Grey, testified as follows:

Q. Do you know the grade that was made on California street in 1884?

A. I do not remember the time it was made, but I know how it is.

Q. You have bought and sold real estate and dealt considerably in it for the last few years?

A. Yes, sir.

Q. And are you familiar with the prices of real estate?

A. Yes, sir.

Q. State to the jury whether or not, in your opinion, the grading of California street and 24th street in front of this Schaller property was a benefit to it or not, considered as a residence location?

A. I would consider the grade of any street benefited to a certain extent, unless it was over graded, and there I considered that they done more than was necessary; I would have considered a grade of five or six feet all that was necessary.

Q. And at the present time what effect do you think that the grade had?

A.   I would think that the property left the way hers is, that it would demoralize it.

Q.   Do you consider it an injury to the property?

A.   Yes, sir.

Q.   Demoralizing it, what do you mean by that?

A.   An injury.

On cross-examination, he testified:

Q.   You think a reasonable grade on a street like that is a benefit?

A.   Yes, sir.

Q.   Especial benefit to the property?

A.   Yes, sir.

Q.   But an unreasonable grade you think to be an injury?

A.   Yes, sir.

Q.   And you consider the grading of the streets as they are now graded an unreasonable grade?

A.   In some cases.

Q.   It is upon the theory that it is an unreasonable grade that you consider it demoralizing, or in other words injured?

A.   Yes, sir.

Q.   You consider the grading or cutting of fifteen or sixteen feet would be an unreasonable grade?

A.   Yes, sir, in that case.

Q.   Are you a civil engineer?

A.   No, sir.

Q.   You are a real estate agent?

A.   Yes, sir.

Q.   How long have you been such?

A.   About three or four years.

Q.   Here in Omaha?

A.   Yes, sir.

There is no denial of the testimony of these witnesses that the cut was too deep for the property to derive any benefit from the grading.

The city attorney contends that all benefits, both general and special, are to be considered, and if equal to the damages to the property there can be no recovery. This case was argued and submitted at the July term, 1887, of this court, but in view of the importance of the question, it being stated that a large number of other cases were depending upon the decision in this case, a re-argument was ordered and had, and the cause again submitted to the court.

The question depends upon the construction to be given to section 21, article I. of the constitution, which is as follows: "The property of no person shall be taken or damaged for public use without just compensation therefor." This section, without the words "or damaged," is a *verbatim* copy of section 13, article I. of the constitution of 1867. The history of the amendment is as follows: In the constitutional convention of 1875, the committee on the bill of rights reported section 21 as it existed in the constitution of 1867. This section was amended in open convention, by adding the words "or damaged," and in that form it was adopted by the people of the state. Section 21, therefore, provides that the property of no person shall be damaged for public use without just compensation therefor. It is conceded that if property is taken for public use, general benefits cannot be considered, but it is claimed that a different rule applies to property damaged, and a number of cases were cited tending to sustain that view. All of these cases, however, while valuable aids in considering the question, are not to be considered as binding upon us in construing our own constitution; and while we entertain a high opinion for the supreme court of Illinois, and courts of the other states named, we cannot allow their decisions to control against the manifest meaning of the constitutional provision. A provision of this kind has existed in no state for more than seventeen years. It is not a matter of surprise, therefore, that the courts are not in

entire harmony in construing it. It is the duty of this court to give it such a construction as will carry out the intent of the framers and the people who adopted it, and do justice in the premises.

In *Wagner v. Gage County*, 3 Neb., 237, this court, in construing the words, "just compensation for land taken," held that general benefits could not be considered, while special benefits might be. That decision was rendered fourteen years ago, and has become a rule of practice in this state, and has never, so far as the writer is advised, been questioned. The words, "just compensation for property damaged," seems to be just as broad as where the property is taken, that is, that the benefits, which the owner of the land in common with the rest of the inhabitants of the vicinity shares, shall not be taken into consideration in estimating the benefits. A different rule injects words into the constitution which are not found there, and puts a forced construction upon its language. It is claimed on behalf of the city, that, if the property will sell for as much after the improvement is made as before, the owner has sustained no damage, although other property in the vicinity may have been greatly enhanced in value thereby. Such a rule, however, takes into account public benefits, and thereby casts the burden entirely upon the party alleged to be benefited. Suppose two or more railroads reaching out into the interior of the state were to be built terminating in Omaha, with the right to lay their tracks along Farnam street. Such roads, when constructed, no doubt would greatly enhance the value of property in the city of Omaha, while by reason of destroying Farnam street as a public thoroughfare they would prevent the rise of property on that street in proportion to other portions of the city, yet if the argument of the defendant's attorney is sound, if real estate on Farnam street did not depreciate in value by reason of its occupancy by the railways, the owners could recover nothing, although property in other por-

tions of the city had advanced fifty or one hundred per cent. That such a rule is not just compensation for property damaged, is self-evident.

The words, " or damaged," in the constitution, being remedial in their nature, are to be liberally construed in favor of justice. The alleged benefits in this class of cases are largely speculative, and not founded on actual sales ; that is, persons who claim to possess knowledge of the value of the property, testify that in their opinion the property is worth as much after as before the grading, and in this case two of the witnesses testify that when the grade is fixed they consider the property worth considerably more than before the establishment of the grade. Streets are graded for the benefit of the public, and any benefit derived by the lot owner is in the nature of an incident, and is not the object of grading the street.

If grades were intended solely for the benefit of the lot owners they would be adapted to the lots along which they were established, and it would rarely be necessary to make cuts as great as shown by the testimony in this case. The rights of the lot owners, however, generally are a secondary consideration, the question being what grade is best adapted to promote the public use. The work, therefore, being for public use, the burden must be borne by the one benefited—the public, although special benefits to any lot owner may be set off as against damages sustained by him from the grading. In awarding just compensation for property damaged for public use, therefore, general benefits to the public at large from the proposed improvements cannot be considered, while special benefits may be set off as against the damages.

In the case under consideration the highest estimate of the special benefits to the plaintiff's property did not exceed the sum of two thousand dollars, while the damages are proved to be greatly in excess of that sum. The verdict, therefore, is not supported by the evidence.

It is unnecessary to review the instructions or the other errors assigned. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.