B. MILLARD v. CITY OF WEBSTER CITY, IOWA, Appellant.

**Cities:** DAMAGE BY CUTTING UNGRADED STREET: *Trespass or direct encroachment not essential*: A city is liable for injuries to abutting property resulting from cutting down a street on which no grade has been previously established, as required by statute, though there has been no trespass or direct encroachment on the property.

*Estoppel to deny that work was done by authority.* Where excavations in the principal streets of a city are made under the direction of the street commissioner and his foreman, in accordance with a survey and plat made by the city engineer, the city is estopped from claiming that the work was not done by its authority, and that it is not the party responsible for injuries to abutting property.

**Evidence:** REFUSAL TO EXCLUDE: *Harmless error.* No prejudice results from a refusal to strike out answers requiring simple computations to make them definite answers to questions as to the value of abutting property immediately before and after injury thereto resulting from a street improvement.

INJURIES TO TREES: *Cross-examination.* Where it was not known that trees on abutting property had been injured by cutting down a street, and that some of them would die by reason thereof, it was not error to permit defendant's witnesses on the question of value to be crossexamined as to the influence the loss of the trees would have on the value of the property.

HARMLESS QUESTIONS.   Questions asked for the purpose of showing that an abutting lot owner had suffered special damages from a street improvement because of his age are not prejudicial, where the answers are not responsive, or deny the special injury sought to be shown, and no motion to strike out is made.

'ORDER OF TESTIMONY:   *Discretion.*   The court may, in its discretion, require the difference and similarity to be shown before receiving proof of the value of other property for the purpose of showing the value of abutting property injured by a street improvement.

*Appeal from Hamilton District Court.*—HON. B. P. BIRD-SALL, Judge.

THURSDAY, JANUARY 31, 1901.

THE plaintiff is owner of 2½ lots in Webster City, abutting on Funk street 132 feet and on Division street 125 feet. During the summer of 1897 these streets were excavated to a depth of from 2 to 3 feet along the lots, though no grade had been established, nor resolution adopted by the city council so ordering; and this is an action for damages occasioned thereby. Judgment was entered against defendant, and it appeals.—*Affirmed.*

*J. H. Richards* and *Wesley Martin* for appellant.

*D. C. Chase* for appellee.

LADD, J.—The facts in this case are similar to those in *Richardson v. Webster City,* 111 Iowa, 427, and what was there said disposes of the appellant's contention that because of no tresspass or direct encroachment on plaintiff's property abutting the streets excavated, even though this were done without resolution or ordinance of the city, recovery may not be had. While the fee to the street is in the city, the manner of improving it is prescribed by statutes which are too explicit to be misunderstood. If these are wholly disregarded and a street cut down, to the injury of an abutting lot owner, the city is not in a situation to complain,

if compelled to recoup in damages. The rule is just and should be adhered to.

II. Certain witnesses testified to the value of the property before the excavations in the street, and, when asked its market value immediately thereafter, one answered, "Probably a reduction of 25 or 30 per. cent."; another, "I should think it would depreciate at least one-third"; and still another, "I would say $500 or $600 less." The motions to strike because mere opinions as to the amount of damages were overruled. It is well settled that inquiry should be directed, as was done in this case, to values immediately before and after the injury, thereby avoiding a mere estimate of the extent of the damages. *Richardson v. Webster City, supra.* But each witness had mentioned the previous value, and that after the excavations, though not specifically stated, was mere matter of computation. While the witnesses might well have been required to make direct answers, it cannot be said, in the light of the record, that any prejudice resulted from retaining the answers given, requiring very simple computations to make them definite.

III. There was no error in permitting inquiry in the cross-examination of defendant's witnesses as to the influence the loss of or injury to the trees might have on the value of the premises. Several witness testified that the trees within and outside the lots had been damaged by the excavations, and that some of them, as a result, would probably die. The same may be said of inquiries directed to the necessity and cost of terracing. These were matters which had not been taken into consideration in estimating values, and were strictly within the bounds of legitimate cross-examination.

IV. One Sterling, having testified that a flight of three or four steps, made necessary to reach the premises, would not impair its value, was asked on cross examination, "If you were 83 years old, would it make any difference?" and answered, "It would not." Under similar circumstances,

Miller, after stating that one or two steps would be an advantage, was asked, "Wouldn't it be if you were 83 years old?" and answered, "I don't know just what the condition is." The subsequent questions made no reference to the matter of age, and, if the witnesses' answers referred thereto, they were not responsive; and, if improper, defendant's remedy was in a motion to strike. The fault of the questions set out is in directing attention to the particular use of the premises by plaintiff, who was of the age stated, as affected by the change. This was not material. The vital question was not the extent of the injury to him because of his great age, but depreciation in the market value of his property. See *In re Furman St.,* 17 Wend. 649; *Lowe v. City of Omaha,* 33 Neb. 587 (50 N. W. Rep. 760). The one answer denied special injury and the other had no bearing thereon. We think no prejudice could have resulted.

V.   On cross-examination, Heslop, who had testified to the value of the premises in controversy, and to having bought lots the same year, was asked, "What difference, if any, in the sale of your lots and the Millard lots, with reference to the location from the central part of Webster City?" On objection being sustained, defendant offered to show the difference between the respective lots, but the ruling was adhered to. The objection was rightly sustained, for two reasons: (1) The question is unintelligible; and (2) the court might, in its discretion, require the differences and similarities to be shown before receiving proof of the amount paid for other lots. See *Town of Cherokee v. Sioux City & S. F. Town Lot & Land Co.,* 52 Iowa, 279.

VI.   The court assumed in the second instruction that the excavations in Division and Funk streets were made at the instance of the city. The work of making these began in July, 1897, and continued up to September of the same year. As it was carried on by the street commissioner and his foreman in two of the main thoroughfares of the city, the council

˙must have known what all others knew, and consented, at least by acquiescence, to what was done. Besides, the excavations were in accordance with a survey and plat made and stakes set by an engineer employed by the city for ·6    that particular purpose. Having caused everything to be done preparatory for the work, and acquiesced ˙in that, it is not in a situation to say this was not done by its authority. The improvement is a municipal duty, and not that of the street commissioner, save as directed by the coun·cil. Sections 651-666, Code. The city had the power to direct these excavations to be made. The wrong consisted in executing that power in a manner prohibited by law. Doing so was not *ultra vires;* else, a city might never be held for the negligent or tortious acts of its servants or agents. *Hunt v. City of Boonville,* 65 Mo. 620. See note to *Goddard ·v. Inhabitants of Harpswell,* 84 Me. 499 (24 Atl. Rep. 958, 30 Am. St. Rep. 406). The commissioner acted under the authority of the city, and not by virtue of that conferred ·on him by the law alone. The liability of the city under ·such circumstances is too well settled to call for discussion. ·—Affirmed.