E. G. LARSON, Plaintiff and Appellee, v. WEBSTER Co., IOWA, and the Board of Supervisors of Webster Co., Iowa, Defendants and Appellants.

**Drainage:** EVIDENCE OF DAMAGE: HARMLESS ERROR. Conceding that the official measurement of a drainage ditch by the engineer is controlling on the question of the landowner's damage, still the admission of evidence in behalf of the landowner concerning its dimensions, which was in substantial accord with that of the engineer on behalf of the county, was harmless error.

**Same:** EVIDENCE: ADMISSIONS. A petition for the establishment of a drainage district reciting that the land embraced therein was subject to overflow and too wet for cultivation, and that the proposed ditch would reclaim large tracts of land, although signed by the landowner, was not so inconsistent with his testimony that one-half of his land within the district was tillable as to constitute a contradictory admission.

**Same:** DAMAGES: EVIDENCE. The court has some discretion regarding the admission of evidence as to damages: Thus where a witness had stated the value of the land per acre, through which a drainage ditch was constructed, prior to its construction, he might properly have been permitted to state that the farm as a whole was worth a specified sum less by reason of its construction, although a departure from the usual method of such evidence in that it failed to state the value of the farm after the establishment of the ditch; but its rejection is sustained in this instance, especially in view of the fact that the witness was later permitted to state the value per acre.

**Same:** DAMAGES: INSTRUCTIONS. While it is true that the establishment of a drainage ditch has reference to the time when it is

ordered by the board of supervisors, and the term construction means the time at which the actual work is done, yet the establishment and construction are so closely related and the terms so interchangeable that, in the absence of a showing that the damage at one time would be different from the damage at the other time, they may be used synonymously by the court, as in this case, in its instructions relating to the assessment of damage for an appropriation of the land.

**Same:** DAMAGES: WAIVER. Where, as in this case, a landowner agreed with members of the board of supervisors individually that he would waive his claim for damages provided the location of the ditch over his land was changed, but this was not acted upon by the board when in session, it is held that in proceedings for the assessment of his damages, this question of waiver was properly taken from the jury because not made to the board nor acted upon by it.

**Appeal:** REVIEW OF QUESTIONS NOT RAISED BELOW. Questions relating to an award of damages for the establishment of a drainage ditch can not be raised for the first time on appeal.

*Appeal from Webster District Court.*—HON. CHAS. E. ALBROOK, Judge.

WEDNESDAY, MARCH 8, 1911.

APPEAL from the allowance of damages in a drainage proceeding. The plaintiff appealed to the district court from the allowance made by the Board of Supervisors. Upon trial of the appeal in the district court, he was awarded an increased sum. From such allowance, the defendants have appealed to this court.

*M. J. Mitchell* and *F. A. Grosenbaugh,* for appellants.

*Healy & Healy* and *H. W. Stowe,* for appellee.

EVANS, J.—The plaintiff was the owner of the N. ½ of section 18, in Colfax township, Webster County, containing three hundred and thirty-two acres. The board of supervisors of such county established a drainage ditch

by proper proceedings, and two branches thereof were laid through the land of plaintiff. These branches extended in a direction nearly north and south. One was laid about on a central line through the east quarter section and the other within about twenty feet of the west line of the farm. About nine acres of his ground was appropriated. The jury awarded damages in the sum of $1,000. The appellant complains of certain proceedings had upon the trial which we will proceed to consider.

I. The west branch of the ditch had been constructed previous to the trial. One Haviland, a witness for the plaintiff, was permitted to testify to measurements of the ditch which he made at certain points. This

1. DRAINAGE: evidence of damage: harmless error.

was objected to upon the ground that only official measurements could be considered, and that these were determined by the engineer's report. This witness testified that at the point where he measured the ditch was thirty feet wide at the top. On behalf of defendant, the engineer testified that the ditch would average about twenty-four feet at the top. The witnesses on both sides agreed that the total area of plaintiff's land appropriated by such ditch was approximately four acres. In our view the difference between the testimony of Haviland and the engineer on that question, if any, was not enought to furnish any ground of complaint to either party. Granting that the official dimensions should control, the practical execution of the work almost of necessity involves some excess of excavation. The purpose of this testimony was to ascertain the area of the land taken and the quantity of dirt thrown into the embankments. As a practical question it can be determined only approximately at best. We think the complaint of appellants at this point is without merit.

II. The plaintiff testified to the general character of his land, and stated that about one hundred and twenty-five to one hundred and fifty acres of the same was in cultiva-

tion. For the alleged purpose of contradicting this testi-
mony, the appellants offered in evidence the
petition filed before the board of supervisors
asking for the establishment of the drainage
district. This petition contained the name of the appel-
lee as one of the petitioners. The petition described the
proposed district in general terms as containing land subject
to overflow and too wet for cultivation, and that the pro-
posed ditch would reclaim "large tracts of land for cul-
tivation," etc. The theory of the appellants is that the
statements of this petition were in the nature of an admis-
sion, and that they were contradictory to the testimony of
the appellee concerning the amount of tillable land upon
his farm. We see nothing in the petition that is in any
degree inconsistent with the testimony of the plaintiff. He
claimed less than half his farm to be tillable. This surely
left large tracts to be reclaimed upon his farm, saying noth-
ing of similar tracts contained in the rest of the district
which were necessarily within the contemplation of the
petition. We think, therefore, that no inconsistency is pre-
sented between the statements of the petition and the plain-
tiff's testimony. The petition, therefore, could not be con-
strued as an admission contradictory to his testimony.

2. SAME: evi-
dence: ad-
missions.

III. One Parel testified as a witness on behalf of ap-
pellants. He stated that the farm of appellee prior to the
establishment of the ditch was worth about $60 an acre.
Upon being asked to state how much it was
worth *after* the establishment of the ditch,
he answered that it was worth about $350
less. This answer was stricken upon motion of appellee.
The answer was repeated in varying form, and successively
stricken by the court. The reason for such ruling was
that the answer was a departure from the usual method
of such testimony, in that it failed to state the *value of
the farm* after the establishment of the ditch. We are of
the view that the trial court might properly have allowed

3. SAME: dam-
ages: evi-
dence.

the answer to stand; the witness having stated the previous value of the land. *Millard v. Webster City,* 113 Iowa, 220. But the answer was a departure from the formal method which was being pursued in the examination of witnesses on that question, and some discretion must be permitted to the trial court in such case. Moreover, the witness was permitted to testify later that the *after* value of the farm was about $58 an acre. This gave the appellants the full benefit of the opinion of the witness on that question, and they were in no manner prejudiced by the previous ruling, even if it were technically erroneous.

IV. The trial court gave the following instructions among others:

(4) The plaintiff's measure of recovery is the difference in the fair and reasonable market value of his property as it was before the ditch was located and constructed across it, and the fair and reasonable market value of the same after the said ditch was located and constructed therein, not taking into consideration any of the benefits to plaintiff's land resulting from the construction of said ditch. In no event, however, can you allow plaintiff less than the fair and reasonable market value of the land actually taken from plaintiff in the making of the said improvement at or about the time taken.

(5) You will abserve from the foregoing that you are in no wise concerned in the benefit, if any, of the improvement to the land of the plaintiff. This benefit is a matter to be considered by another tribunal, and you are only required to determine the amount of damages plaintiff sustains on account of the construction across and upon his land of the improvement in question, not considering any benefits, if any, to his land. . . .

(8) When you retire to your jury room, you will first determine what has been proven to you by a preponderance of the evidence to have been the fair and reasonable market value of the plaintiff's land immediately before the time of the establishment of the ditch in question. You will then proceed to determine the fair and reasonable market value of the said land, as established by a preponder-

ance of the evidence, immediately after the location of said ditch, not considering the benefits, if any, accruing to said land as the result of the construction of said ditch. The difference between these two amounts shall and must be your verdict.

It is urged that these instructions were inconsistent, in that instructions four and five directed the jury to allow as damages the difference in the value of the farm before and after the *construction* of the ditch, where-as instruction eight fixed the *establishment* of the ditch as the time when comparison of value should be made. The ditch was established by order of the board in September, 1908, whereas the west branch of it was constructed across appellee's land about one year later. Such branch was constructed before the trial. The east branch had not been constructed at the time of the trial. That there is a distinction to be observed for some purposes between the *establishment* of the ditch and the *construction* of it is plain. The words were evidently used by the trial court as interchangeable and as synonymous for the practical purposes of the case. For the purpose of ascertaining damages, they are so closely related and so bound together as to be quite inseparable. Technically speaking, the mere establishment of a ditch by official action of the board does not of itself work damage to claimant's farm, and yet the prospective damage must be inquired into and ascertained after such establishment and often before the actual construction. But the damages in such case are measured and ascertained on the theory that there will be a *construction* of the ditch. It sometimes happens that the trial of an appeal in the district court is had after the actual construction has taken place. In such a case the inquiry naturally turns to the constructed ditch as the concrete thing. The *construction* of the ditch is in pursuance of the *establishment* of it and the *establishment* of the ditch is a necessary preliminary

*4. SAME: damages: instructions.*

to the *construction* of it. Without the establishment, the construction would be illegal. Without the construction, the establishment would be harmless and without damage. We think, therefore, that the interchangeable use of these terms in such a case as the present one is not misleading, and that the terms are in a certain sense synonymous for the purpose of such case. In *Gish v. Hamilton County,* 136 Iowa, 155, it was said that the damages should be fixed by the difference in the value of the land immediately before and after the *construction* of the ditch. In that case the establishment of the ditch was had on September 26, 1905, and the trial in the district court was had May 12, 1906. The real complaint made by appellants in such case was that the trial court submitted the question of difference of value in the present tense, thus fixing the time of the trial as the time of comparison, instead of the time of establishment some months previous. It is evident, therefore, that the word *construction* was used in the opinion in that case somewhat in the synonymous sense which we have already discussed. Ordinarily it will make no practical difference which point of time is taken for the comparison of values. Unless it be made to appear, therefore, that the *difference* in value is greater or less at one point of time than at the other, we can not deem the interchangeable use of these terms as misleading as prejudicial. See *Richardson v. Webster City,* 111 Iowa, 428; *Renwick v. Railroad Co.,* 49 Iowa, 664; *Hartley v. Railroad Co.,* 85 Iowa, 455. In none of the above cases was the distinction observed between the *establishment* and *construction* of the improvement.

V. The west branch as originally established was laid about one hundred and fifty feet east of appellee's west line, and ran nearly parallel with it from the north line

5. SAME: damages: waiver.

to a point three hundred feet north of the south line, and then turned west. After appellee's appeal had been taken to the district court, he

had a talk with the engineer in charge of the improvement, and with some members of the board of supervisors, wherein he asked that the line of the ditch be changed and laid over against his west line. Some members of the board visited the ground in company with the engineer and the appellee.. A row of small trees occupied appellee's west line, and these he agreed to cut. It is claimed on behalf of appellants that the appellee also agreed to waive his claim for damages for this west branch, if it should be moved over on his west line. A few days later the engineer presented to the board of supervisors the following report, which was duly approved by the board of supervisors: "Honorable Board of Supervisors, Webster County, Iowa. Gentlemen: I wish to make the following recommendation regarding drainage district No. 57: That the line of the open ditch through the westerly portion of sections 7 and 18 of Colfax township be so located that the ditch will be along the west side of said sections, and that the west waste bank be deposited on the highway which runs along the west side of the sections mentioned, as much as possible. This recommendation is made at the request of the property owners in said sections through whose land the ditch will be located and with the express understanding that Mr. E. G. Larson will remove the line of willow trees at his own expense, which borders the west edge of section 18. Respectfully, Chas. H. Reynolds, Engineer. Filed September 16, 1909. Approved by Board September 18, 1909."

In pursuance of this report of the engineer and the approval of the board, the line of the west branch was shifted one hundred and thirty feet to the west which carried it to a line twenty feet east of appellee's west line. At the time of the trial in January, 1910, the defendants filed an additional answer pleading an agreement with the plaintiff to the effect already stated. After hearing the testimony, the trial court withdrew it from the considera-

tion of the jury, and complaint is made of this ruling. The evidence at best was quite indefinite. It will be noted, too, that the engineer in his amended report expressly specified the condition upon which it was made, that Larson should *cut the willows*. Whatever was said by the plaintiff was said to certain members of the board not in session, and no action of the board was ever taken with reference thereto so far as appears from the official record. We think, therefore, that the ruling was proper. The new location of the ditch undoubtedly injured the appellee less than the original location. A smaller area of his land was appropriated. The inquiry into appellee's damages was made upon the basis of this change and the assessment was necessarily made by the jury upon such basis, and the appellants, therefore, got the full benefit of it in reduced damages.

VI. At the time of the change of location referred to in the foregoing paragraph, the appellee's appeal was then pending in the district court, and came on for trial a few months later. It is now urged that his appeal was from the allowance of damages for the former location, and not for damages caused by the new location or establishment. It is urged that, after the change of location in pursuance of the amended report of the engineer, the appellee should have filed a new claim for damages, and that, having failed to do so, he has no standing. This question is not without its difficulties. The claim originally filed by appellee was broad enough in its terms to include damages arising out of either location, and it is urged by appellee that that was sufficient and that it would have been a mere idle form for him to refile the same claim merely for the purpose of prosecuting an appeal. Our attention is also directed to the fact that this point was in no manner presented in the trial court, and is presented here for the first time. This

6. APPEAL: review of questions not raised below.

of itself is fatal to our further consideration of the question.

We find no prejudicial error in the record, and the order below must be *affirmed*.