SALLIE H. H. LOWE v. CITY OF OMAHA.

[FILED DECEMBER 18, 1891.]

1. **A petition in error** must specifically point out the rulings of the trial court, on the admission of testimony, which are relied on for a reversal, or they will not be considered.

2. ———: CITIES: CHANGE OF STREET GRADE: DAMAGES. When city property is damaged by reason of the grading of the street upon which it abuts, the owner is entitled to remuneration. The difference in the market value of the property with the improvement and that without it, not considering general benefits shared by the general public, is the rule of compensation. In such case special benefits to the property directly attributable to the improvement, may be set off against the damages sustained by the owner. (*Schaller v. City of Omaha*, 23 Neb., 325.)

3. ———: ———: ———: THE MARKET VALUE is not what the property is worth solely for the purpose for which it is devoted, but the highest price it will bring for any and all uses to which it is adapted, and for which it is available.

ERROR to the district court for Douglas county.    Tried below before DOANE, J.

*Kennedy & Gilbert,* for plaintiff in error, cited: *Schaller v. Omaha,* 23 Neb., 325, and cases.

*A. J. Poppleton, contra,* cited, as to what constitutes special benefits: *Roberts v. Com'rs Brown Co.,* 21 Kan., 247; *Springfield v. Schmook,* 68 Mo., 394; *Palmer Co. v. Ferrell,* 17 Pick. [Mass.], 58; *Trosper v. Com'rs,* 27 Kan., 391; *Allen v. Charlestown,* 109 Mass., 243; *Sexton v. N. Bridgewater,* 116 Id., 200; *Allegheny v. Black's Heirs,* 99 Pa. St., 152; *Hilbourne v. Suffolk Co.,* 120 Id., 393; *Cross v. Plymouth,* 125 Id., 557.

NORVAL, J.

The plaintiff in error is the owner of the north half of block 146 in the city of Omaha, and a strip of land 20 feet wide and 264 feet long adjoining said premises on the south.    The half block consists of four lots, each being 66 feet by 132 feet.    The property is bounded on the east by Sixteenth street, on the north by Harney street, and on the west by Seventeenth street.    The following statement of the case we take from the plaintiff's brief:

"In the year 1873 the city authorities established a grade upon Harney street, running east and west in front of said premises, by which initial points of grades of Sixteenth and Seventeenth streets were fixed at their intersections with Harney street.    The grade elevation at the intersection of Sixteenth and Harney being 118 feet; at the intersection of Seventeenth and Harney 135 feet; and at the intersection of Sixteenth and Howard streets the elevation

was 100 feet.   There was a break in the grade on Sixteenth street, midway been Harney and Howard, about opposite the southeast corner of the plaintiff's premises.   The gradient of Sixteenth street along the east side of the plaintiff's premises was about one per cent, or one foot in 100 feet, and on Harney street along the north side of said premises, six and four-tenths per cent from Sixteenth to Seventeenth streets, which would have left the surface of the plaintiff's premises four or five feet above the curb line at Seventeenth street, and about fifteen feet above the curb line of Sixteenth street.

"In the year 1883 the grade of Harney street was changed by the city, commencing at a point on the established grade line, about midway between Sixteenth and Seventeenth streets, running westward to an elevation of 130 feet at Seventeenth street, in which year Sixteenth street was graded in conformity to the 1873 grade, and an approach was made on Harney from Sixteenth.

"In 1885 these grades were again changed by lowering the grade at Sixteenth and Harney, ten feet, and at Seventeenth and Harney, fifteen feet."

From an appraisement of damages, an appeal was taken by the plaintiff to the district court, and the work of grading commenced on Sixteenth, Seventeenth, and Harney streets.   On November 7, 1885, the plaintiff commenced an action for damages for grading on Sixteenth street in 1883, for which no damages had been allowed, no proceedings having been taken to ascertain such damages.   Issues were joined in this action in which the defendant pleads special benefits in offset to the damages sustained.   While the work of grading was being prosecuted, and early in 1886, another change of these grades was made by the city, again lowering them at the intersection of Sixteenth, Seventeenth, and Harney streets, about four or five feet, and from these proceedings the plaintiff also appealed to the district court.   These cases were, by the order of the court,

consolidated and tried together. On the 25th day of February, 1889, a trial was commenced to a jury and continued from day to day until March 6th, on which day a verdict was returned by the jury in favor of the defendant. The plaintiff's motion for a new trial was overruled and judgment rendered on the verdict.

The petition in error contains seven assignments of error:

1. That the verdict is not sustained by sufficient evidence and is contrary to law.

2. That certain errors of law occurred at the trial of said cause which were excepted to at the time by the plaintiff.

3. The court erred in giving the 1, 2, 3, 4, 5, and 6 paragraphs of the instructions of its own motion.

4. The court erred in giving instructions 1 to 9, inclusive, asked by the defendant.

5. The court erred in refusing to give the instructions requested by the plaintiff.

6. The court erred in giving all the instructions given, and refusing those asked by the plaintiff.

7. The verdict of the jury should have been for the plaintiff.

No complaint is made in the brief filed by the plaintiff in error to the giving and refusing of instructions, therefore the 3d, 4th, 5th, and 6th assignments will be regarded as waived, and will not be considered by us.

Counsel contend that error prejudicial to the plaintiff was committed by the trial court in permitting the city to introduce testimony tending to show that the grading of the street increased the value of the plaintiff's property for business purposes. We suppose this question was intended to be raised by the second ground of the petition in error, but this assignment is too general. When a party desires this court to review the rulings of the trial court on the admission or exclusion of testimony, he must specifically point out the alleged errors in the petition in error. This

has been held in a long line of decisions. (*Tomer v. Dins-more*, 8 Neb., 384; *Shaffer v. Maddox*, 9 Id., 205; *Mc-Cormick v. Drummett*, Id., 384; *Graham v. Harnett*, 10 Id., 517; *Birdsall v. Carter*, 11 Id., 143; *Cook v. Pickrel*, 20 Id., 435.) The relevancy of the testimony will not be now discussed, and will be considered hereafter only so far as is deemed necessary to the proper disposition of the other questions, which are sufficiently raised by the record.

The remaining assignments, the 1st and 7th, present the same proposition, Is the verdict sustained by sufficient evidence? The defendant claims that the plaintiff's property was not damaged by reason of the grading of the streets upon which the property abuts, for the reason that the special benefits to the property resulting directly from the improvements are equal to or greater than the damages sustained.

The testimony shows that the property is situated near the business portion of the city, being separated from the court house by a street, and only a block distant from the Bee and New York Life buildings. At the time the grades were changed there were upon the premises a large brick dwelling, with stone basement, valued by the witnesses from $25,000 to $50,000, a brick barn worth between $3,000 and $3,500, besides trees and other improvements. The house was occupied by the plaintiff as a homestead. The premises are situated upon a hill, the natural surface of the ground being from twenty-eight to thirty feet above the last grade established in 1886. Plaintiff was not the owner of the property when the 1873 grade was fixed, and did not own two of the lots until after the grade was changed in 1883. When the grading was completed the property was so situated that the barn had to be taken down to prevent its falling, and, in order to reach the residence, stairs from the street, containing from forty to fifty steps, were constructed. To bring the property down to the proper grade requires the removal

of about 26,000 yards of earth, the removal of 19,000 yards being made necessary by the last three changes of grade. The cost of removing the dirt, as estimated by the witnesses, would be from fifteen cents to twenty-five cents per yard.

The testimony introduced by the plaintiff goes to show that it is impracticable to lower the dwelling, and that on account of the grading of the streets plaintiff's premises were depreciated in value to the amount of the entire improvements thereon and the cost of grading the lots. Some of the plaintiff's witnesses testify that her property was depreciated fully thirty-three per cent of its former value, which is variously estimated at sums ranging from $110,-000 to $170,000.

The testimony offered by the city tends to show that the natural surface of Harney street in front of the premises, was a rise of ten feet in a hundred; or a rise on that street of forty-six feet between Fifteenth and Seventeenth streets, and that there was a descending grade of about seven per cent from Seventeenth to Eighteenth streets, or a fall of thirty-four feet from Seventeenth to Nineteenth streets; that before any grading was done there was no facility for travel on Harney street, and although plaintiff's property was within a block of the business portion of the city, yet prior to the grading, it was desirable only as a residence and was entirely inaccessible for business purposes; but as soon as the grading was finished the business part of the city pushed west towards plaintiff's premises; that immediately before the passage of the grade ordinance in 1885, the property did not exceed the value of $125 a foot front; but that as soon as the work was finished it was worth from $400 to $600 a foot front.

That there was a large increase in the value of the Lowe property between the passage of the ordinances changing the grade and the completion of the improvements of the streets is fully proven. It likewise appears that this in-

crease is not wholly influenced by the improvements of the streets upon which this property abuts, but that owing to the rapid growth of the city and the construction of these and other improvements there was a general advance in values all over the city, which to a considerable degree affected this property. But the general increase in value is not to be considered as an element in ascertaining whether the plaintiff is entitled to compensation or not. She was as fairly entitled to the benefit of this general appreciation, as her neighbors who had not been in any manner disturbed in the enjoyment of their property. This rule is too well settled and understood to need support from adjudged cases.

There is in the record abundant testimony conducing to show that a great portion of the enhanced value of plaintiff's property was directly attributable to the grading of the streets bordering the same, and that the premises were especially benefited by the improvements. It is no longer an open question in this state that when private property is damaged by reason of the construction of a public improvement near it, remuneration must be made, and the difference in the market value of the property with the public improvement and that without it, not considering general benefits shared by the general public, is the rule of compensation. Special and peculiar advantage which the property receives from the improvement is to be considered in determining whether there is injury or not. In other words, special benefits to the property may be set off against the damages sustained by the owner. This rule affords complete indemnity to the individual and leaves him in as good condition as he was before the making of the improvements. (*Schaller v. City of Omaha*, 23 Neb., 325; *City of Omaha v. Kramer*, 25 Id., 489.)

The plaintiff contends that the grading of the streets did not enhance the market value of her property specially, and beyond the mere general appreciation of other prop-

41

erty. This position would be well founded if it is allowable only to take into consideration the use to which the property was devoted when the improvements were made. The grading of the street certainly did not enhance the value of the property for the purpose of a residence, the use to which it was applied. In determining its value without the improvement it was proper to take into consideration not only the use to which it was at that time devoted, but the availability for any other purpose and the demands therefore, so far as the same entered into and affected its market value. If it was worth most in the market as a residence the plaintiff was entitled to have such value considered, but if it would have sold for the highest price for some other use to which it was adapted, she was entitled to that. The market value of anything is the highest price it will bring for any and all uses. So, if in consequence of the improvement of the streets, the property was made accessible for, and was best adapted for a purpose other than that to which it was devoted, such as sites for business houses, and was worth most in the market for such purposes, it was competent to take it into consideration in determining whether the plaintiff was injured by grading of the streets. Neither the plaintiff nor the city was confined to the market value of the property as a residence, if it was more valuable for some other use.

A case in point is *In the Matter of Furman St.*, 17 Wend. [N. Y.], 649. The report of the case shows that one Peter W. Radcliff owned a lot in the city of Brooklyn extending from Columbia to Furman street. His dwelling house fronted on Columbia street, and the rear portion of the grounds were laid out and cultivated as a fruit and ornamental garden. Radcliff purchased the lot and built the house thereon solely for the purpose of a permanent home. The street in the rear of his lot was ordered by the city authorities cut down forty-five feet in depth. Bronson, J., in passing upon the question of damages, observes, "It

it not unnatural that any one in the possession of a highly cultivated garden and pleasure ground, with a dwelling which overlooks the city and bay of New York, should desire to continue all things around them in their present condition; and to a person who, in the evening of a well spent life, has retired from the bustle of the city and the pursuit of an arduous profession to seek repose in such situation, the thought of being broken up in his final arrangements for life must be peculiarly painful. To his ears it will sound like a sad misnomer to call that improvement which, in its effect, will blast the trees and shrubs and wither the vines and the flowers which his own hands have planted. But, however much the necessity for disarranging the plans of any individual may be regretted, the great principle upon which public improvements are to be effected must be substantially the same in all cases. All classes and conditions of men hold their property subject to the paramount claims of the state, and when it is taken for public purposes, and the question of compensation is presented, the only proper inquiry is, What is its value? The question is not what estimate does the owner place upon it, but what is its real worth, in the judgment of honest, competent, and disinterested men? The use to which the owner had applied his property is of no importance beyond its influence upon the present value. If highly cultivated, it will be worth more than though it had been suffered to run to waste. I cannot yield to the argument that the commissioners were bound to regard only the use to which the property is now applied, and pay the appellant a sufficient sum of money to secure him in that mode of enjoyment for the future. They might properly take in consideration the more advantageous use to which the property may be applied in consequence of the opening of a new street. In a case like this, the proper mode of adjusting the question of damages is to enquire, What is the present value of the land, and what it will be worth when the contemplated

work is completed?   In deciding these questions, neither
the purpose to which the property is now applied, nor the
intention of the owner in relation to its future enjoyment,
can be matters of much importance.   In both cases the
proper inquiry is: What is the value of the property for
the most advantageous uses to which it may be applied?
*   *   *   In relation to the several persons who will be
affected, the commissioners are required to make, an 'esti-
mate of the damages and an assessment of the benefit which
will be sustained and derived by them respectively from
such improvements.'   It is the influence of the improve-
ment upon the actual value of the property which the
commissioners are to consider.   If the property will
be more valuable when the work is done than it was
before, the owner will not sustain any damages, but will
derive a benefit from the improvement."

To the same effect we cite the following: *M. & R. R.
Boon Co. v. Patterson*, 98 U. S., 403; *King v. M. W. R.
Co.*, 32 Minn., 224; *Gooden v. Canal Co.*, 18 O. S., 169.

In this case the proofs show that plaintiff's property was
specifically benefited by reason of the grading.   Before
the improvement is was not desirable nor specially val-
uable as business property; but by grading the surround-
ing streets it was thereby rendered accessible and desirable
for such purpose, and its market value was thereby greatly
increased.   In view of the testimony we think the jury
were justified in finding that the special benefits which the
property derived from the grading of the streets were in
excess of the damages resulting therefrom.   The judg-
ment is

AFFIRMED.

THE other judges concur.