## Staunton.

## Town of Galax v. Waugh.

### September 17, 1925.

1. Streets and Highways—*Change of Grade in Street—Damages to Property Owners—First or Subsequent Grading—Case at Bar.*—In some States it has been held that a city or town has the right to depart from a natural or surface grade, without liability for damages except for negligence in doing the work, as every one could reasonably anticipate that a grade would be established at some time. But under constitutional provisions similar to that of Virginia (Constitution of 1902, Art. IV, sec. 58), forbidding the "damaging" of private property, the decided weight of authority makes no difference between a first and subsequent grading where improvements have been made with reference to an existing grade. And in the instant case, a proceeding by a property owner to recover for damages to his property by the change of grade in a street, the plaintiff was not precluded from recovering any special damages sustained by him by reason of the fact that no grade had been previously established.

2. Eminent Domain—*Constitution of 1902, Art. IV, Section 58—Just Compensation—Damage to Property.*—The Constitution of 1902 (Art. IV, sec. 58) provides that the General Assembly "shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation." The words "or damaged" are new. Prior to 1902, if no part of the property was taken, but the property was damaged by municipal improvements, *e. g.,* a change in the grade of a street, it was *damnum absque injuria,* and the owner and not the public had to sustain the loss.

3. Eminent Domain—*Damages—Benefits—Constitution of 1902, Art. IV, Section 58.*—Under Constitution of 1902, Art. IV, section 58, for the land taken the owner is entitled to receive full compensation in money, without deduction for any benefits, but, as to the land not taken, there is to be deducted from the damage sustained peculiar benefits received, and if the damage to the residue of the tract falls short of such peculiar benefits, the deficiency is not to be charged to the owner, and he would have no cause of action for damage to such residue.

4. Eminent Domain—*Damages—Benefits—Community Benefits.*—Community benefits are not to be considered in estimating the damage

to property not taken, either before or since the adoption of the Constitution of 1912, but community benefits do not include special benefits to all the property on the same street arising out of a change of grade of the street.

5. Streets and Highways—*Change of Grade—Measure of Damages to Abutting Owners—Market Value.*—The measure of damages for the change of grade of a street is the difference in market value before and after the change, so far, of course, as the difference is due to the change, excluding consideration of general damage suffered by the community at large and general benefits enjoyed by the community at large.

·6. Eminent Domain—*Special Benefits—Community Benefits.*—Because special benefits are common to several or a number of property owners on the same street, they are not to be regarded as community benefits, and they are to be taken into account in estimating the value of the property after an improvement.

7. Eminent Domain—*Constitution of 1902, Art IV, Section 58—Inequalities—Case at Bar.*—The wit of man has not yet devised any scheme for the imposition of burdens for the use of the public that will not at times produce some inequalities, and it may be do some injustice, but this is one of the burdens of organized society. All the Constitution guarantees is that private property shall not be taken or damaged for a public use without just compensation. In the instant case no part of plaintiff's property was taken, and although it was damaged to the extent of $750, it was enhanced in value by the improvement far in excess of this sum. Plaintiff, therefore, could not complain that he had been damaged, but only that, in his case, there was a deduction from the benefit he would otherwise have enjoyed while there was no such deduction from the benefits received by others similarly situated. This might be inequality but it was not injustice.

·8. Eminent Domain—*Constitution of 1902, Art. IV, Section 58—Change of Grade of Street—Obstruction of Free Access.*—A city or town has no right to obstruct its streets so as to deprive the property owner of free access to and from his property abutting thereon. Such access materially affects the value of his property, and obstruction is a "damage" peculiar to him for which the Constitution provides he shall be compensated. But this compensation need not be paid in money. If the property owner is otherwise made whole, if he has received peculiar benefits from the improvement which equal or exceed his loss or damage, then he has not been damaged within the meaning of the Constitution. It is generally agreed that peculiar damage may be set-off by special or peculiar benefits.

·9. Eminent Domain—*Damage to Abutting Property from Improvements—Constitution of 1902, Art. IV, Section 58—Estimating Damages—Effect*

*of Improvement on Market Value of Whole Property.*—Where the right of recovery by an abutting owner turns on the diminution in the pecuniary or market value of his property caused by a public improvement, the effect of the improvement on the market value of the whole property should be considered, and not merely such effect on part of it. If one part of the property is specially benefited, and the value of the whole is not diminished, then there is no damage done, and no recovery can be had.

10. Eminent Domain—*Just Compensation—Constitution of 1902, Art. IV, Section 58—Damage to Land.*—The "just compensation" provided for by the Constitution of 1902, article IV, section 58, for private property, taken or damaged for public uses, is a fair equivalent for the "damage" inflicted. If the owner of the property is made whole in consequence of the enhanced value of his property by the improvement, then he is not damaged within the meaning of the Constitution. The enhanced value which makes him whole, however, must be an enhancement to him and to others similarly situated, and not a mere general, or community enhancement, common to all, whether similarly situated or not.

11. Eminent Domain—*Just Compensation—Constitution of 1902, Art. IV, Section 58—Damage to Land—Change of Grade of Street.*—If the change of the grade of a street causes an enhancement of the market value of property abutting on that street greater than that of property not so abutting, the excess benefit is special to such abutters, although a number are so benefited, and is to be taken into account in determining whether or not the property of such abutter has been "damaged" within the meaning of the Constitution.

12. Streets and Highways—*Change of Grade of Street—Damage to Property Not Taken—Enhanced Value of Property—Case at Bar.*—In the instant case, a claim against a town by a property owner for damage to his property by a change in the grade of a street, no grade lines had ever been established for the street at the time of the grading complained of, but for many years the grades of the streets and sidewalks of the town conformed generally to the natural contour of the ground. The overwhelming weight of the evidence was to the effect that the property of the plaintiff as a whole had its market value largely increased by the improvement—between $2,500 and $6,250— and that the special damage to the property was only $750. The increase in value to plaintiff's property was not peculiar to that property alone but was enjoyed by all the property owners on the street.

*Held:* That in estimating the market value of the property of plaintiff after the improvement, there should be taken into consideration the special benefits received by him in consequence of the enhanced value of his property by reason of the improvement, notwithstanding that other property owners abutting on the street also enjoyed such

enhanced values, and as the findings of fact showed that such en-
hancement far exceeded the damage sustained by plaintiff, it follows
that a judgment in his favor must be reversed, and the Supreme
Court of Appeals having ample facts before it to attain the ends of
justice, in pursuance of section 6365 of the Code of 1919, reversed the
judgment in favor of the plaintiff and rendered judgment in favor
of the defendant.

Error to a judgment of the Circuit Court of Grayson
county, in a proceeding against a town for damage to
plaintiff's property by a change of grade of a street.
Judgment for plaintiff. Defendant assigns error.

                                                    *Reversed.*

The opinion states the case.

*S. F. Landreth* and *W. B. Kegley,* for the plaintiff
in error.

*Rhudy & Sutherland,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

The town of Galax raised the grade of a section of
Main street between three and four feet along the
side of the property of J. B. Waugh, which Waugh
claimed damaged his property to the amount of $8,000.
He presented a claim for this amount to the council
of the town, which refused to allow him anything.
Thereupon Waugh appealed to the Circuit Court of
Grayson county, in which county the town of Galax
is situated. All matters of law and fact were submitted
to the judge of said court, without the intervention of a
jury, and he entered judgment in favor of Waugh for
$750. To this judgment a writ of error was awarded
by one of the judges of this court.

The town of Galax was incorporated by the legis-

lature in 1906.   Prior thereto, in 1903 and 1904, the town had been partly laid off in an orderly manner by the Grayson Realty Company of which J. B. Waugh was the president, and some of the lots had been sold and buildings erected thereon.   No grade lines had ever been established for the streets at the time of the grading hereinafter referred to, but for many years the grades of the streets and sidewalks conformed generally to the natural contour of the ground.   During this period J. B. Waugh purchased two adjoining lots, each fronting thirty feet on Grayson street, running back between parallel lines 215 feet to a twenty-foot alley, and one of them running along Main street 215 feet.   On these two lots Waugh left a space of five feet for a sidewalk on Grayson street, and built a storehouse of brick, two stories high with a basement, fronting sixty feet on Grayson street, with a depth of seventy-five feet on Main street.   On the rear of the lot, on the Main street front, he erected a one story brick building, used as a barber shop, fronting seventeen feet on Main street and running back the same width forty-five feet along the alley in the rear of the two lots, leaving a vacant space of eighteen feet on Main street between the barber shop and the rear of the store house, with a depth of sixty feet.   Access to the basement of the store house was almost entirely by a door opening on Main street. Access to the barber shop was also by a door on Main street.   The natural grade of Main street and the sidewalk thereon leading up to Grayson street was a maximum of ten per cent.   Prior to the improvements hereinafter mentioned, Main street was almost impassable in the winter time, and at other times of wet weather.

In the spring of 1923 the town of Galax entered upon a scheme of street improvement and found it necessary to raise the grade of Main street along the property

of Waugh. The grade opposite the side door of the storeroom on Main street was raised four feet four inches, and opposite the barber shop it was raised three feet seven inches. After thus raising the grade, the town surfaced the street with concrete base and bitulithic surface and constructed a new concrete sidewalk, with concrete curb and gutter so that the surface water was carried off and away from Waugh's property. The obstruction of the two doors aforesaid constitutes the basis of the claim of Waugh for damages.

A large number of witnesses were examined in the case, and there is a wide difference of opinion between them, but these differences are settled by the findings of fact by the trial judge, which are not here called in question. His findings of fact (omitting detailed statements of some of the witnesses) and conclusions of law, were as follows:

"The undisputed facts are that the entrance to a large basement room having 21,000 cubic feet has been virtually closed up and that there is now no direct entrance to the same, that this room was used for the storage of seed, fertilizers, heavy groceries, etc., and that a large retail business was conducted from this room in these articles, being about $50,000 per annum, that this retail business has been practically ruined, that the room is, in its present condition, practically valueless. That the vacant lot eighteen feet wide is now four or five feet below the sidewalk, and the floor of the barber shop now has to be reached from the sidewalk by five steps, when prior to the grading they both were practically on a level with the sidewalk. That there is a way of entering from the rear of the large building into the large basement room, by what is now an inconvenient passway and in its present condition not easily usable by trucks, and there is also a

way down from the first story sales room fronting on
Grayson street—this by means of stairs.    *    *    *    *

"A number of other witnesses were put upon the
stand and virtually testified to the same effect.    The
overwhelming weight of the evidence is to the effect
that the property of Capt. Waugh taken as a whole
has had its market value increased, by reason of the
street grading, anywhere from ten to twenty-five per
cent.    Virtually every witness has testified that this
increase in value is not peculiar to the property of
Capt. Waugh, but is enjoyed by all property owners on
Main street.    Most of the witnesses have testified that
the closing of the door to the basement has caused in-
convenience in the use of the basement, and virtually
all of the witnesses have testified that the raising of
the grade has damaged the barber shop, but not the
lot.    It is admitted by all the witnesses that grading
will have to be done to have a proper entrance to the
basement of the large building and some other little
expense entailed, and further that it will be more in-
convenient in getting in and out after this work is done
than if the side entrance was still usable.

"So much for the facts:    What is the law in those
cases?

"The Court of Appeals has twice passed upon these
questions since the new Constitution: First, in *Swift &
Company* v. *Newport News*, 105 Va. p. 108, 52 S. E.
821, 3 L. R. A. (N. S.) 404; and, second, *Nelson County*
v. *Loving*, 126 Va. p. 283, 101 S. E. 406.    A careful
study of these cases has led the court to believe that
the law is that the difference in the cash market value
of the property immediately before and immediately
after the improvement is the test, and that in determin-
ing this value, deduct any special benefit to the property
due to the improvement, but leaving out of considera-

tion such general benefits as accrue to it in common with other property similarly situated, as well as all other general benefits due to the improvements which will be enjoyed by the community in general; and that inconvenience to the landowner caused by the change, as well as any costs that will have to be incurred in adapting the property to the change of grade should be considered. Applying this law to the facts in the case at bar, the court is of opinion that no peculiar or special benefit, that is not enjoyed in common by the community, has enured to the complainant. That the complainant has suffered some damage, inconvenience and loss by reason of the change, but the overwhelming evidence is that it is no such loss or damage as the plaintiff's witnesses have testified to. From the evidence, which is meager on this point, as well as a careful inspection of the situation in person by the court, the court is of opinion that a judgment in favor of the plaintiff for the sum of $750 will cover his loss, damage and inconvenience. Therefore, it is considered by the court that judgment may go for the complainant against the defendant for the sum of $750.00 and costs, with interest from May 1, 1923."

We interpret the foregoing finding and opinion to be this: The market value of Waugh's property was increased by reason of the street improvement from ten to twenty-five per cent, but all other property on the same street was increased in value in the same proportion from the same cause, and for that reason "no peculiar or special benefit, that is not enjoyed in common by the community, has enured to" Waugh. In other words, if all property on *the same street* is increased in value in the same proportion, then the increase is not a peculiar or special benefit to Waugh and is not to be taken into consideration in determining whether or

not his property has been increased in value by reason of the improvement. Valuing Waugh's property at $25,000, and the increase at twenty-five per cent, it was worth $25,000 before the improvement and $31,250 after and by reason of the improvement, or if the increase was only ten per cent, he has gained $2,500, and yet he is entitled to recover $750 special damages suffered by him, because all other property owners on that street have received a similar advance in value, without deduction of any kind.

Upon the facts found, was the property of Waugh "damaged" within the meaning of the Constitution, by reason of the improvement? This depends upon how the market value is ascertained after the improvement. If not only general community increase in value be excluded, but also local benefits to all on the same street, then there has been no increase in value by reason of the improvement, and the property owner is entitled to recover for the peculiar injury he has sustained. But if local benefits be included, it cannot be said that the private property of the owner has been "damaged" for the public use. In such case it has not only not been damaged, but increased in value.

[1] At the time of the improvement no grades had been established by the town, but Waugh (hereinafter called the plaintiff) had erected his buildings with reference to the natural grade, or contour of the surface. In some States it has been held that a city or town has the right to depart from a natural or surface grade, without liability for damages except for negligence in doing the work, as every one could reasonably anticipate that a grade would be established at some time. But under constitutional provisions similar to ours, forbidding the "damaging" of private property;

the decided weight of authority makes no difference between a first and subsequent grading where improvements have been made with reference to an existing grade. *Kimball* v. *Salt Lake City*, 32 Utah 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483, 125 Am. St. Rep. 859; *Hickman* v. *Kansas City*, 120 Mo. 110, 25 S. W. 225, 23 L. R. A. 658, 41 Am. St. Rep. 684, 690; *Hutchinson* v. *City of Parkersburg*, 25 W. Va. 226; *Borough of New Brighton* v. *United Pres. Church*, 96 Pa. St. 331; *Sallden* v. *City of Little Falls*, 102 Minn. 358, 113 N. W. 884, 13 L. R. A. (N. S.) 793, 120 Am. St. Rep. 635; *Wright* v. *City of Butte*, 64 Mont. 362, 210 Pac. 78; *Harman* v. *City of Bluefield*, 70 W. Va. 129, 73 S. E. 296, and cases cited. So that the plaintiff is not precluded from recovering any special damages sustained by him by reason of the fact that no grade had been previously established.

[2] The Constitution of 1902 (Article IV, Section 58) provides that the General Assembly "shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation." The words "or damaged" are new.

Prior to 1902, if no part of the property was taken, but a damage such as is here complained of was inflicted, it was *damnum absque injuria*, and the owner and not the public had to sustain the loss. *Home Building Co.* v. *Roanoke*, 91 Va. 52, 20 S. E. 895, 27 L. R. A. 551.

*James River, etc., Co.* v. *Turner*, 9 Leigh (36 Va.) 313, arose under the Constitution of 1831, which did not contain the words "or damaged." It involved a construction of the language of the charter of the canal company. That language is not involved in the instant case. The chief value of the case is the holding that, as to the land actually taken, there should be no

deduction for benefits of any kind, but its cash value should be paid in full, and that in estimating "the advantage to be derived by the owner of the land" not taken, the advantages to be considered were such as particularly· and exclusively affect the particular tract or parcel of land whereof a portion is condemned— not advantages of a general character which may be derived to the owner in common with the country at large from the improvement.

Only three judges sat and they were not unanimous in their views. The separate opinions, however, contain valuable discussions and illustrations of what constitute community benefits and what special and peculiar advantages and disadvantages.

In *Muire* v. *Falconer*, 10 Gratt. (51 Va.) 12, 18, it is said that it was held in *James River, etc., Co.* v *Turner*, *supra*, "that the advantages thereby contemplated are such as particularly and peculiarly affect the particular tract of land, a portion whereof is condemned, and not advantages of a general nature, which may be derived to the owner in common with the country at large."

*Mitchell* v. *Thornton*, 21 Gratt. (62 Va.) 164, arose under a statute containing the same language as our present statute (Code, sec. 1978), requiring commissioners in condemnation proceedings to ascertain what will be a just compensation for the land proposed to be taken, "and for the damage to the residue of the tract beyond the peculiar benefits which will be derived in respect to such residue." In construing this statute Judge Moncure, speaking for the whole court, said: "The proprietor is entitled to receive as compensation at least the value of the land proposed to be taken for the road, or rather the value of the use of the land for the road, which is generally equal to the full value

of the land. The freehold of the land, subject to the public easement of the road, still remains in the proprietor, who is entitled to any minerals under it which may be taken from it without injuring the road or interfering with the use of it by the public. In addition to the value of the land, or of the use of it, the proprietor is entitled to be compensated for the damage to the residue of his tract beyond the peculiar benefits which will be derived in respect to such residue from the road. If the damage to the residue of the tract exceed the value of the peculiar benefits which will be derived in respect to such residue from the road, then the proprietor will be entitled to be compensated for such excess. But if the damage to the residue of the tract fall short of such peculiar benefits, then the deficiency is not to be charged to the proprietor, nor deducted from the amount to which he is entitled on account of the land proposed to be taken for the road, as aforesaid. And the peculiar benefits referred to in this law are such as particularly and peculiarly affect the particular tract of land, a portion whereof is proposed to be taken for the public use, and not such benefits of a general nature as may be derived to the owner in common with the county at large. *Jas. River & Kan. Co.* v. *Turner,* 9 Leigh (36 Va.) 313."

[3] This case settles the proposition that for the land taken the owner is entitled to receive full compensation in money, without deduction for any benefits, but that, as to the land not taken, there is to be deducted from the damage sustained peculiar benefits received, and "if the damage to the residue of the tract fall short of such peculiar benefits," the deficiency is not to be charged to the owner, and, it would seem, that he would have no cause of action for damage to such residue.

In *Richmond & M. R. Co.* v. *Humphreys*, 90 Va. 425, 435, 18 S. E. 901, an instruction was approved which told the jury that, in ascertaining the damages to the residue of a tract, a part of which was taken for a public use, the measure of the plaintiff's damages was the difference between the market value of such residue at the time of taking and its market value after such taking, and, in ascertaining such damages, they might consider every circumstance, present or future, which affected its then value. See also Cooley's Const. Limitations (5th ed.) 702 and cases cited.

[4] *Williamson* v. *Read*, 106 Va. 453, 456, 56 S. E. 174, and *Arminius Chem. Co.* v. *Landrum*, 113 Va. 7, 11, 73 S. E. 459, 38 L. R. A. (N. S.) 272, Ann. Cas. 1913 D, 1075, exclude community benefits in estimating damages to the residue, and it may be conceded that *community* benefits are not to be considered in estimating the damage to property not taken, either before or since the adoption of the present Constitution, but none of the cases cited settle the question as to the effect of the change of grade of a street resulting in special benefits to all property on the same street.

In the well considered case of *Swift & Co.* v. *Newport News*, 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404, there was a change of grade in front of the plaintiff's property of from four to seven inches, and he sought a recovery for the damages sustained by him. The evidence showed that the plaintiff's property was worth more after the improvement than before, that the change in value was due to the improvement which wrought a corresponding change in value in other property on the same street and there was no evidence of enhancement in value of other property in the community not fronting on the same street. After an examination of a number of cases, including those from

West Virginia and Missouri, the following conclusion was announced:

"The rule sanctioned by the authorities we have referred to, and in fact universally recognized, it may be said, in all cases in which recovery was sought for damages where no part of the property is taken, but merely damaged by a public improvement, is in entire harmony with the rule adopted in a long line of cases holding that the damages to the residue of the tract was an amount equal to the difference in the market value of the residue at the time of the taking and its market value after the same had been so taken. If this were not the correct rule, and plaintiff in error's contention could be sustained, damages would be recoverable in every case where the owner of property along the line of a public improvement incurred expense in adjusting his property to the improvement, although his property has been enhanced in value beyond the expense incurred, not because his property has been depreciated in value by the improvement more than benefited, but merely because other property similarly situated had been more or less benefited. Such a result would not only be unjust and inequitable but would greatly retard the making of such common and necessary public improvements as are here complained of, and many others of like character and importance.

"There is no evidence in this case, whatever, of any benefits to the community at large by reason of the paving of Twenty-third street, upon which plaintiff in error's property, assessed for taxation at $22,000, abuts, but the evidence was limited solely to the special benefits which enhanced the value of this particular property, both in fee simple and rental value, tending to show an increase in both respects greatly in excess

of the damages claimed as having been sustained by reason of the change in the grade of the street; and it would seem clear that the only inference that could be drawn from the evidence was that the other property in the community, not fronting on this paved street, was not enhanced in value, as the evidence shows that the fact that the property fronted upon the paved street was the sole cause of the enhancement of its value."

Our conclusion might be safely rested here, but for the following statement by this court in *Nelson County* v. *Loving*, 126 Va. 283, 302-3, 101 S. E. 406, 412: "It may be difficult, if not impossible, to find a satisfactory distinction in principle between benefits due to street or road improvements which are conferred on abutting land and benefits conferred on land very near by but not actually abutting on the street or road which is improved. And the rule laid down in the *Swift & Co. Case* may lead in principle to the conclusion that all benefits which are conferred on the land by the improvement of a street or public road should be taken into consideration in ascertaining whether the land has been damaged by the public improvement, but if so, this would seem to be a conclusion at variance with the earlier views expressed by this court on that subject (*James R. & Kanawha Co.* v. *Turner*, 9 Leigh [36 Va.] 313, and note to 50 Va. Rep. Ann. [10 (9) Gratt.] 13), and with the holding in the great majority of the States—only seven or perhaps eight of the States having adopted such conclusion. 2 Lewis on Em. Dom. secs. 687-692. But this court has not yet, as aforesaid, gone so far in its holding.

"Much, indeed, may be said in favor of the rule established in West Virginia, to the effect that the true measure of damages to abutting real estate by the change of grade of a street is the difference between

the market value of the property immediately before and its market value immediately after the street improvement, less any special or peculiar benefits to the property due to the improvement, but leaving out of consideration such general benefits as accrue to it in common with other property similarly situated, as well as all other general benefits due to the improvement which will be enjoyed by the community in general. *Rutherford* v. *Williamson*, 70 W. Va. 402, 74 S. E. 682; *Harman* v. *Bluefield*, 70 W. Va. 129, 73 S. E. 296; 10 Am. & Eng. Ency. L. (2d ed.), p. 1177. And it may be that upon further consideration the rule laid down in *Swift & Co.* v. *Newport News* might be modified to some extent. But whether this should or should not be done is not a question presented for our determination in the cases before us."

Undoubtedly there is great force in the West Virginia cases referred to, but there is ample room for serious difference of opinion as to the correctness of the conclusion reached. As pointed out in the opinion in *Nelson County* v. *Loving, supra,* what was there said was not necessary to the decision of the case, and hence did not receive that careful consideration it would otherwise have received, but any statement in a judicial opinion, whether necessary to the conclusion reached or not, coming from the careful and painstaking judge who delivered the opinion in the *Loving Case*, is entitled to very high respect and demands most careful consideration. In this frame of mind and with this conviction, we have approached a reconsideration of *Swift & Co.* v. *Newport News, supra.*

It is unnecessary to repeat and review the cases cited and relied on in the opinion, including *Stewart* v. *Ohio River Ry. Co.*, 38 W. Va. 438, 18 S. E. 604, and *Blair* v. *Charleston*, 43 W. Va. 62, 26 S. E. 341, 35

L. R. A. 852, 64 Am. St. Rep. 837. They are in point and sustain the propositions for which they are cited.

In 2 Lewis on Em. Dom. (3d ed.), sec. 891, it is said: "Where the suit is for the 'just compensation' guaranteed by the Constitution, the measure of damages is the depreciation in value of the property for the causes sued for, or the difference in value before and after as affected by such causes." The same author, in section 737, says: "Under the recent constitutional provisions which prohibit the damaging or injuring of property without compensation, there may be a recovery in such cases. The correct measure of damages, in all such cases, is undoubtedly the diminution in value of the property by reason of the change, or the difference in value before and after the change. The owner shall receive such a sum as will make him whole. Some cases limit the recovery to the costs of adjusting the property to the new grade, if that is less than the diminution in value. It is proper to consider the expense of adjusting the property to the new grade, the costs of filling, and the costs of a retaining wall, if necessary. But these items cannot be recovered specifically. They are only elements tending to show damages." The author cites in support of the text quoted a large number of cases from twenty-three different States.

[5] In 10 R. C. L. p. 175, sec. 152, it is said: "The measure of damages for the change of grade of a street is the difference in market value before and after the change, so far, of course, as the difference is due to the change, excluding consideration of general damage suffered by the community at large and general benefits enjoyed by the community at large, except in the few jurisdictions which allow general benefits to be set off. Everything which affects the market value is to

be taken into consideration. The creation of noise and dust, the invasion of privacy, the deprivation of light and means of access, the burden of additional fencing and like matters are to be included, not by being added together item by item, but to the extent that, taken as a whole, they detract from the market value of the property. It often happens, in the case of a change of grade, that by raising or lowering the adjoining premises to correspond with the new grade of the street, they can be placed in the same relative position to the street as before, and thus brought back to the same market value. The cost of thus restoring the premises is admissible in evidence in connection with other evidence as to the injury to market value, but it is not the measure of damages unless it is the most reasonable method of treating the property, or in other words unless it is no greater in amount than the decrease in market value of the property if it is left as it stood."

The same author in discussing set-off of benefits, in section 156, says: "The majority of courts hold that only special benefits can be considered, although the mere fact that all the property on the same street participated in the benefit does not make the benefit general. In other words, both neighborhood and peculiar benefits may be set-off, but not general benefits."

In *Kirkendall* v. *City of Omaha*, 39 Neb. 1, 57 N. W. 752, it is said: "If an improvement should result in an increase in the value of adjacent property, which increase is enjoyed by other adjacent property owners, as to the property of each exclusively, the benefit is special; and it is none the less so because several adjacent lot owners derive, in like manner, special benefits, each to his own individual property. Such fact, if it exists, in no respect decreases the increment in value enjoyed by any one of the adjacent property

owners; and, by way of offset, such increment should therefore be treated as a special benefit in favor of whomsoever it may arise."

In *Aswell* v. *Scranton*, 175 Pa. St. 173, 34 A. 656, 52 Am. St. Rep. 841, in speaking of a street improvement by change of grade, it is said: "If every property along the street was made more accessible, then every property along the street was specially benefited, and the amount of that benefit should be set-off against the damages, if any, inflicted by the improvement as made. It is the actual loss suffered for which the lot-owner should be compensated. That loss may be measured with exact justice by the depreciation in value of his property resulting from the improvement complained of. If his property is injured that others may be benefited, his loss should be made good; but if the grading or other improvement increases the value of his property as much as or more than it cost him to repair, or to readjust himself to the changed state of things, he is not a loser and ought not to recover."

In *Sallden* v. *City of Little Falls*, 102 Minn. 358, 113 N. W. 884, 13 L. R. A. (N. S.) 793, 120 Am. St. Rep. 635, which was a street grading case, it was said: "The proper measure of damages is the difference in the value of the property alleged to have been injured before and after the acts complained of, unless the cost of restoring the property to its natural condition is shown to be less than the difference in value, in which case the cost of restoration is the measure of relief to which the property owner is entitled."

In *City Council* v. *Schrameck*, 96 Ga. 426, 23 S. E. 400, 51 Am. St. Rep. 146, it is said: "The measure of damages in such cases is the actual diminution in the market value of the land resulting from the change of grade. In ascertaining whether there has been a

diminution in the market value, however, facts which may show that the value has actually decreased, such as that certain changes and expenditures are necessary to bring it to its former condition, although they would not authorize a recovery of the cost of such changes as independent items of special damage, are admissible as throwing light upon the general question of diminution in market value, and are always admitted for this purpose.    The fact that a change in the grade of a street has left a lot considerably below the level of the street, and that the expenditure of a certain amount would be necessary to restore it to a level with the street, would not authorize a recovery of that amount as specific damages, but might very properly be considered as showing that the lot was thereby rendered less salable than before, and that its market value had decreased."    To the same effect, see *Morgan* v. *City of LaGrange* (1924), 31 Ga. App. 686, 121 S. E. 703.

*Allen* v. *Charleston*, 109 Mass. 243, arose under a statute of Massachusetts, but in construing the statute it became necessary for the court to distinguish between general and special benefits, and the court said: "The benefit is not the less direct and special to the land of the petitioner because other estates upon the same street are benefited in a similar manner. The kind of benefit which is not allowed to be estimated for the purpose of such deduction is that which comes from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof. (Citing cases.) The advantages of more convenient access to the particular lot in question, and of having a front upon a desirable avenue, are direct benefits to that lot, giving it increased value in itself. It may be the same, in greater or less degree, with each and every

lot of land upon the same street. But such advantages are direct and special to each lot. They are in no proper sense common, because there are several estates, or many even, that are similarly benefited." To the same effect are *Donovan* v. *Springfield*, 125 Mass. 371; *Cross* v. *County of Plymouth*, 125 Mass. 557; *Abbott* v. *Inhabitants of Cottage City*, 143 Mass. 521, 10 N. E. 325, 58 Am. Rep. 143.

In *Benton* v. *Brookline*, 151 Mass. 250, 260, 23 N. E. 846, 847, it is said: "The general benefit to the community, and through that to the landowner, from new and better roads, is not regarded, but any increase in value to the land from the fact that it lies upon a new or improved way, or is directly benefited by the improvement, is a special or particular or direct benefit to be offset against the damages, although all other landowners on the way may be benefited in the same manner."

All of these cases, except *Donovan* v. *Springfield*, which was a case of change of grade, were cases of widening streets, but the principle involved was that the benefits were none the less special because all on the same street were similarly affected.

The late West Virginia cases seem to change the rule formerly prevailing in that State.

In *Morrison* v. *Fairmont Traction Co.*, 60 W. Va. 441, 55 S. E. 669, it is said that if the expressions in *Stewart* v. *Ohio R. R. Co.*, 38 W. Va. 438, 18 S. E. 604, and *Blair* v. *Charleston*, 43 W. Va. 62, 26 S. E. 341, 35 L. R. A. 852, 64 Am. St. Rep. 837, tended to announce a rule of law by which the landowner would be charged with general benefits, they were incorrect. But this does not exactly solve the difficulty. The question is not whether the landowner shall be charged with general or community benefits, but what benefits are

general or community benefits, and what are special or peculiar. In the later cases of *Harman* v. *Bluefield*, 70 W. Va. 129, 73 S. E. 296, and *Rutherford* v. *City of Williamson*, 70 W. Va. 402, 74 S. E. 682, the court undertakes to point out what benefits are general and what are not, and distinctly holds that benefits that are common to other property on the same street are general and are not to be taken into account in estimating the value of the property after the improvement. In the last mentioned case it is said: "Plaintiff is entitled to such damages, if he has sustained any on account of the excavation on Second avenue, as will make him whole. But, in estimating his damages, the city is entitled to have set-off against them such special or peculiar benefits, if any, as have accrued to the property on account of the improvement. It is difficult to define what is meant by special benefits, and we will not undertake to give a general definition. But, whatever they are, they certainly are not such benefits as are shared in common by owners of other property situated on the same street. These common, or general, benefits the property owner is entitled to as a taxpayer; and, in estimating his damages, he is not to be charged with any enhancement in value of his property on account thereof."

No authority is cited for the holding in the last two cases.

[6] We have examined a large number of cases, including many of those cited by the authors quoted, but outside of the West Virginia cases cited we have found no case involving the precise question before us in which it has been held that because special benefits are common to several or a number of property owners on the same street, they are to be regarded as community benefits, and not to be taken into account in estimating

the value of the property after the improvement. There are expressions in some of the opinions and texts that would lead to that conclusion, but we have found no case expressly so holding.

*Swift & Co.* v. *Newport News, supra,* has been cited with approval more than once by this court. In *Tidewater R. Co.* v. *Cowan,* 106 Va. 817, 823, 56 S. E. 819, 821, it is said: "In that case the facts were so far different from the facts of this case that it has no application here whatever. There no part of the land was taken, the improvement of the street in its front enhanced its value considerably, and necessitated some expense to meet the changed grade of the street; this expense was less than the enhancement of value and plaintiffs claimed that the amount of this expense should have been allowed, regardless of the effect of the improvement on the whole lot. Upon that state of facts it was held that no part of the land having been taken, the rule of assessment is: Ascertain the whole increased value of the property alleged to have been damaged by reason of the improvement; ascertain the items of depreciation (which necessarily include expense incurred in protecting the residue of the tract or lot) from the same causes; and, unless the latter exceed the former, allow nothing to the landowner on account of damages."

In *Virginian R. Co.* v. *London,* 114 Va. 334, 344, 76 S. E. 306, 307, referring to that case, it is said: "In that case the court was dealing with an injury to property only, caused by the change of grade of a street, and *as a matter of course,* if the change in the grade added to the market value, no injury was sustained by the act complained of." (Italics supplied.)

[7]. The wit of man has not yet devised any scheme for the imposition of burdens for the use of the public

that will not at times produce some inequalities, and it may be do some injustice, but this is one of the burdens of organized society. All the Constitution guarantees is that private property shall not be taken or damaged for a public use without just compensation. No part of the plaintiff's property was taken, and although it was damaged to the extent of $750, it was enhanced in value by the improvement far in excess of this sum. He cannot complain that he has been damaged, but only that, in his case, there is a deduction from the benefit he would otherwise have enjoyed while there was no such deduction from the benefits received by others similarly situated. This may be "inequality but it is not injustice." It is constantly happening in the assessment of property for taxation, and is well nigh unavoidable. Notwithstanding the plaintiff's peculiar damage, he comes out of the transaction with a profit of several thousand dollars due wholly to the improvement. It is true the whole town was more or less benefited by the improvement, and to this extent the benefit was a community benefit not to be taken into account, but property fronting on the same street was peculiarly and specially benefited by converting a street that was at times muddy and almost impassable, and of a steep grade, into a hard-surfaced street, comfortable for use at all times and seasons, of an easier and safer grade, and with a granolithic sidewalk, thus inviting to all kinds of travel, at all times, alongside of plaintiff's property. The improved street was a constant invitation to the public to pass along that way, which was a benefit peculiar to the owners of property along that street, and not enjoyed by the owners of property along other streets of the town. The remarks of Parker, J., in *James River, etc., Co.* v. *Turner, supra,* aptly apply to the situation. He

said: "It is true the law may operate unequally as most human laws do. One class of persons may receive equal benefits with another, and may contribute less or lose nothing. But so long as the other class receives a fair equivalent for losses, how can it be said that the property of those who belong to this class is taken without consideration, and that in violation of the Constitution? The simple fact is, that they get the worth of their property, while others, who lose no land, share the benefit. This is inequality, but not injustice. It is the case of the laborers in the vineyard, who bore the burden and heat of the day, but received only the penny which was given to the eleventh hour man." The remarks of Judge Parker were made in a case where the land of one of the parties was taken, but with how much more force do they apply where no land is taken, but only damaged?

[8, 9] A city or town has no right to obstruct its streets so as to deprive the property owner of free access to and from his property abutting thereon. Such access materially affects the value of his property, and is a "damage" peculiar to him for which the Constitution provides he shall be compensated. There is no doubt, therefore, that plaintiff below has sustained a damage for which he is entitled to compensation, but he is not entitled to have this compensation paid in money. If he is otherwise made whole, if he has received peculiar benefits from the improvement which equal or exceed his loss or damage, then he has not been damaged within the meaning of the Constitution. It is generally agreed that peculiar damage may be set-off by special or peculiar benefits. Every substantial improvement of the streets of a city or town affects, to a greater or less degree, property values all over the city or town, and this is especially true of the principal

streets.   There are streets in every city or town which are the principal thoroughfares owing to grading, paving, lighting and other improvements, and while such improvements add to the values of other real estate, more or less distant, there is a peculiar or special benefit added to the property abutting on the street improved.

This subject is discussed by Mr. Freeman in a note to *O'Brien* v. *Philadelphia*, 30 Am. St. Rep. 835, 845, from which we make the following extract:

"*Measure of Damages.*—When city property is damaged by reason of the grading of a street upon which it abuts so as to entitle the property owner to recover under the constitutional guaranty that private property shall not be damaged without compensation, the measure of recovery in consequential damages is the difference in the market value of the property with the improvement, and that without it, not considering general benefits or injuries shared by the public in general. *City of Denver* v. *Bayer*, 7 Colo. 113 [2 P. 6]; *Lehigh Valley Coal Co.* v. *Chicago* [C. C.], 26 Fed. Rep. 415; *Chambers* v. *South Chester*, 140 Pa. St. 510 [21 A. 409]; *Lowe* v. *Omaha*, 33 Neb. 587 [50 N. W. 760]; *City of Elgin* v. *Eaton*, 83 Ill. 535, 25 Am. Rep. 412; *Springer* v. *City of Chicago*, 135 Ill. 553 [26 N. E. 514, 12 L. R. A. 609]; *Chouteau* v. *St. Louis*, 8 Mo. App. 48; *Omaha* v. *Kramer*, 25 Neb. 489 [41 N. W. 295], 13 Am. Rep. 504.   The rule is stated in *Parker* v. *Atchison*, 46 Kan. 14 [26 P. 435], to be that where a city changes the grade of one of its streets an abutting lotowner will be entitled to any special damage he may suffer thereby; and in a suit to recover, the jury may take into consideration the condition of the property, the street, and the grade, and also the market value of the property immediately before and

after the grading; and when the property is injured in value, the measure of damage will be the difference in the market value brought about by reason of the change of the grade; and when the property is not injured in value by reason of such change, no damages can be recovered. The damage must be measured by the pecuniary loss; and if the property is benefited as much as damaged by the change of grade in the abutting street, there can be no recovery; *City of Elgin* v. *Eaton*, 83 Ill. 535, 25 Am. Rep. 412; *Springer* v. *Chicago*, 135 Ill. 552, [26 N. E. 514, 12 L. R. A. 609]. In *Moore* v. *City of Atlanta*, 70 Ga. 611, 614, the court said that 'if any owner of property be damaged by the grading of a street, so as to lessen the pecuniary value of his property, he may recover damages for such injury to his freehold. That damage will be measured by the decrease in the actual value of his property. If the value pecuniarily be not decreased, he can recover nothing. If it would have been decreased in value as a mere residence, without regard to the improvement of access made by the grade of the street, and yet this improvement and the increased value thereby produced equaled the inconvenience or discomfort of the house as a mere residence, then the one could be set-off against the other, and no recovery could be had. In other words, the right of recovery would turn in each case on the diminution in the pecuniary or market value of the property caused by the grade.' This is the doctrine pronounced by the following cases: *City of Atlanta* v. *Green*, 67 Ga. 386; *Springer* v. *City of Chicago*, 135 Ill. 553 [26 N. E. 514, 12 L. R. A. 609]; *Lowe* v. *Omaha*, 33 Neb. 587 [50 N. W. 760]; *Schaller* v. *Omaha*, 23 Neb. 325 [36 N. W. 533]; *Denver* v. *Bayer*, 7 Colo. 113 [2 P. 6]; *City of Shawneetown* v. *Mason*, 82 Ill. 337, 25 Am. Rep.

321; *Lehigh Valley Coal Co. v. Chicago* [C. C.] 26 Fed. Rep. 415—all holding that in such a case the effect on the market value of the whole property should be considered, and not merely such effect on part of it. If one part of the property is specially benefited, and the value of the whole is not diminished, then there is no damage done, and no recovery can be had. Any general benefit common to all other property should not be considered in determining whether the property is benefited as much as injured or not. While the measure of damages is the difference in the market value of the abutting property before and after the grading is done, yet neither the falling of a brick wall nor the apprehended undermining of a dwelling house situated thereon can be considered in estimating the damages. *City Council of Montgomery v. Townsend*, 80 Ala. 489 [2 So. 155], 60 Am. Rep. 112; and only the injury resulting directly from the improvement itself, and not subsequent injuries or annoyances, can be considered in estimating the damages. *City Council of Montgomery v. Townsend*, 84 Ala. 479 [4 So. 780]. The whole subject of the measure of damages in such cases is excellently stated in *Lehigh Valley Coal Co. v. Chicago*, in the United States circuit court for the northern district of Illinois, and reported in 26 Fed. Rep. 415, where Mr. Justice Dyer, in instructing the jury in that case, said: 'In considering the case the true question is whether the property was injured by the improvement. If not, then there is no damage, and can be no recovery. If there is, then the recovery must be measured by the extent of the loss. If the property is worth as much after the improvement as it was before, then there is no damage done to the property. If the benefits received from making the improvement are equal to or greater than the loss, then the property

is not damaged.  There can be no damage to property
without a pecuniary loss.  If there is no depreciation in
value, there is no damage; and if no injury, then there
should be no recovery.  This is the language of the
Supreme Court of this State on the subject, and estab-
lished the general rule by which we should be guided
in disposing of this case.  The test is that the alleged
injury must rest upon some substantial cause actually
impairing the value of the property or its usefulness,
and not to be the result of taste or fancy, merely be-
cause of the proximity of the improvement to the prop-
erty claimed to be affected.  Whether the plaintiff's
property was damaged depends upon whether it
received such material injury as rendered it less valu-
able to the owners, or less useful as a whole, than it
would have been but for the viaduct having been con-
structed as it is.  It is not the damages to a part of the
property, considered separately from the rest, that
you are allowed to assess, but the damages, if any, to the
property as an entirety, by reason of the construction
of the viaduct, that are to be taken into consideration.
It is inadmissible to treat any portion of the property
injured as a distinct and separate parcel from any
portion benefited.  A partial effect only is not to be con-
sidered, but the whole effect; and the effect, not upon
any selected part of the property, but upon the whole
property.  It is, of course, admissible to consider the
injury, if any, to a part as affecting the whole, or as
showing a damage to the whole; but what I mean is
that if a part of the property be benefited or not in-
jured, and a part be injured, you have no right to
award damages for injury to the part as disconnected
from the remainder, or the part benefited or not in-
jured.  *   *   * ' ''

[10, 11] The "just compensation" of the Constitu-

tion is a fair equivalent for the "damage" inflicted. If the owner of the property is made whole in consequence of the enhanced value of his property by the improvement, then he is not damaged within the meaning of the Constitution. The enhanced value which makes him whole, however, must be an enhancement to him and to others similarly situated, and not a mere general, or community enhancement, common to all, whether similarly situated or not. If the change of grade of a street causes an enhancement of the market value of property abutting on that street greater than that of property not so abutting, the excess benefit is special to such abutters, although a number are so benefited, and is to be taken into account in determining whether or not the property of such abutter has been "damaged" within the meaning of the Constitution.

This re-examination and reconsideration of *Swift & Co.* v. *Newport News, supra,* satisfies us that the conclusion there reached is sound, and that there is no occasion to modify it. It is so reasonable that, even independent of authority, we should feel disposed to treat the excess benefits received as special and peculiar to the plaintiff, and to be taken into account in determining whether or not he was damaged by the improvement.

[12] Having reached the conclusion that, in estimating the value of the property of the plaintiff, Waugh, after the improvement, there should be taken into consideration the special benefits received by him in consequence of the enhanced value of his property by reason of the improvement, and that the finding of facts shows that such enhancement far exceeds the damage sustained by him, it follows that the judgment in his favor must be reversed; and as there are ample

facts before this court to enable it to attain the ends of justice, it will, in pursuance of section 6365 of the Code, proceed to enter such judgment as to it seems right and proper, which is that the judgment in favor of the defendant in error be reversed and his action be dismissed, and that the plaintiff in error do recover of the defendant in error its costs in this court and also in the circuit court.

*Reversed*