## Richmond

### Thomas Campbell and Julia Campbell v. State Highway Commissioner of Virginia.

January 20, 1969.

Record No. 6827.

Present, All the Justices.

James H. Michael, Jr.; John C. Lowe (Carl E. Hennrich; Michael and Dent; Gilmer and Hennrich, on brief), for appellants.

Paul D. Stotts, Assistant Attorney General (Robert Y. Button, Attorney General; Kelly E. Miller, Assistant Attorney General, on brief), for appellee.

Buchanan, J., delivered the opinion of the court.

Thomas Campbell and his wife assert in this case a right to have compensation for a spring taken by the Commissioner in a condemnation proceeding.

The spring was on land owned by J. Deering Danielson and wife. By deed dated January 5, 1951, the Danielsons conveyed to the Campbells:

(a) The exclusive right to the spring, reservoir, pump house and water lines, together with a right of way for the maintenance of the same on and over the lands of the Danielsons; and

(b) A right of way or easement for a telephone and power line on and over the land of the Danielsons.

In 1961 the State Highway Commissioner condemned in fee simple for highway purposes land belonging to the Danielsons on which the said spring and other rights were located. In said proceeding it was agreed that compensation to the Campbells for the rights and easements owned by them over said land would not be considered by the commissioners in that proceeding but would be determined in a separate proceeding.

Accordingly, on September 6, 1966, the Highway Commissioner filed his petition in the court below asking for the appointment of commissioners to ascertain what would be just compensation to the Campbells "for the easements and rights of way which are being condemned and which have been taken for the use of the Commonwealth of Virginia for a public highway and to award damages, if any, resulting from the taking of said easements and rights of way, as aforesaid."

In Paragraphs 5 and 6 of said petition it was alleged that at the time of acquiring the Danielson land the Commissioner and the Campbells entered into an agreement by which the Commissioner agreed to replace the water supply from the spring with a water supply from the system of the City of Charlottesville, and to acquire easements and install pipes to bring city water to the Campbell property, including a pump to carry city water to the Campbell residence; and that it was further agreed that such replacement of water would be compensation to the Campbells "for the taking of said easements, but that the question of damages, if any, would be determined by additional agreement or by condemnation proceeding, if necessary."

Said petition further alleged that the Commissioner had performed this agreement and had spent $10,060.00 "to bring City water to this property."

On September 22, 1966, the Campbells filed an answer to this petition in which they specifically denied the allegations in said Paragraphs 5 and 6 that they had entered into any agreement with the Commissioner regarding compensation for taking said easements and rights of way, or for damages to their remaining land, and they asserted their right to be paid just compensation "for land rights taken and for damages to their remaining land."

Thereafter, by order entered November 25, 1966, five commis-

sioners were appointed and directed to "fix the value of the land taken and damages, if any, which may accrue to the residue beyond the enhancement in value, if any, to such residue by reason of the taking."

On the same day the commissioners filed their report stating that they had been appointed by the court to ascertain "what will be the damages, if any," to the property of the Campbells by reason of the taking of the easements owned by them, and to assess the damage, if any, to their remaining property; and that after being sworn they went upon and viewed the land, heard such evidence as was before them, and they ascertained that "the damages, if any, to the adjacent or remaining property" of the Campbells "by reason of the taking of the easements described above are no damages."

Thomas Campbell filed exceptions to this report on the ground that the court had improperly limited the commissioners to finding damages to the residue of the Campbell property resulting from taking the spring and excluding compensation for the taking. The court overruled the exceptions and confirmed the report of the commissioners by order of January 31, 1967, from which the Campbells have appealed.

In said order of January 31, 1967, the court stated that at the time of the taking of the Danielson land which carried the easements owned by the Campbells, the Highway Commissioner provided for a supply of water to the property of the Campbells from the water supply of the City of Charlottesville to replace the water from said spring, and the court was of opinion that the question to be decided was whether the taking of the rights and easements belonging to the Campbells and the replacement thereof by the city water supply, had affected the fair market value of the land owned by the Campbells.

Accordingly the court instructed the commissioners that they were to decide "whether the taking of the appurtenances, rights and easements herein and the replacement thereof by a city water supply has affected the fair market value" of the land owned by the Campbells; and if the fair market value had been diminshed, they should award the amount thereof to the Campbells; or if not diminished but enhanced, they should award nothing to the Campbells.

This instruction and the finding of the commissioners in accordance therewith constituted error. They gave no consideration to the value of the things taken.

The spring was property and the easements were property rights owned by the Campbells. "* * [It] is a well settled doctrine that there may be a conveyance of water or water rights separate and apart from the land thereunder, and that such a conveyance is a conveyance of a property right." *Hite* v. *Town of Luray*, 175 Va. 218, 224, 8 S.E.2d 369, 371.

Section 58 of the Constitution of Virginia forbids the enactment of any law "whereby private property shall be taken or damaged for public uses, without just compensation".

Section 33-63.1 of the Code, 1953 Repl. Vol., 1966 Cum. Supp., provided that the commissioners appointed "shall fix the value of the land taken and damages, if any, which may accrue to the residue, beyond the enhancement in value, if any, to such residue, by reason of the taking."

Section 33-73 of the Code provides that any enhancement in value "shall not be offset against the value of the property taken"; and if the enhancement exceeds the damage there shall be no recovery over against the landowner for the excess. See *Highway Commissioner* v. *Reynolds*, 206 Va. 785, 789, 146 S.E.2d 261, 264; *Town of Galax* v. *Waugh*, 143 Va. 213, 224, 129 S.E. 504, 507; *Long* v. *Shirley*, 177 Va. 401, 409, 14 S.E.2d 375, 378.

The court below limited the rights of the Campbells to the difference, if any, in the value of their land before and after the taking of the spring on the basis that the Campbells had agreed that the furnishing of city water would be full compensation for the taking of the spring. The Highway Commissioner so alleged in his petition but this was specifically denied by the Campbells in their answer, as stated above. On the issue thus made, the burden was on the Commissioner to present evidence that there was such an agreement. But the Commissioner offered no evidence sufficient to prove the existence of such a contract.

The only witness who made any reference to an agreement was William B. Rhett, Jr., Assistant District Right-of-Way Engineer, called as a witness by the Commissioner. He was asked to state "what led up to this controversy". He replied that in determining the damage to the property, there was a spring there that Campbell had the exclusive use of, and it was necessary to do something for Campbell's water supply after the spring was "terminated". "We tried various schemes," he said, with Campbell and his attorney, one of which was to have the water line hooked onto the city main at the

Belair Estates. Campbell asked that they consider another way of doing that because it would be hard to get into the reservoir and spring due to their construction; that they tried other schemes, and then he said:

"We finally, or agreed—or understanding between the two parties, our Department, Mr. Campbell and Mr. Chamberlain [then Campbell's attorney], to run the line in from 250, a six-inch pipe along the right-of-way of the fifty-foot road that's on the east of the Children's Rehabilitation Center. We also had to get the easements through the little section of road in there of Mr.——"

At that point the court ruled that it was not material as to how the city water was gotten out there, or how much it cost to put it there.

This evidence, which, as stated, was all the evidence on the subject, fell far short of establishing the existence of a contract on Campbell's part to accept the city water supply, for which he must pay the city rate, as compensation for taking the spring from which he had the exclusive right to take water without cost.

The Campbells concede that the provision for city water in the place of the spring water has resulted in no damage to the residue of their property beyond the enhancement of value created thereby. The only issue, therefore, that remains to be resolved is the just compensation to be paid the Campbells for the spring and easements that were taken.

The order appealed from is therefore reversed and the case is remanded to the trial court with direction to appoint other commissioners in the manner provided by law, and the commissioners so appointed shall view the premises, hear the testimony in open court on the issues joined, fix the value of the property taken and make their report to the court, as provided by law.

*Reversed and remanded.*